## CASE NO. 25-10962

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**B.P., a Minor, by and through Next Friends Jessica and James Pruden,**
**Plaintiffs - Appellants**

**v.**

**Burkburnett Independent School District,**
**Defendant - Appellee**

---

**On Appeal from the United States District Court**
**For The Northern District of Texas,**
**Wichita Falls Division; Civil Action No. 7:24-cv-00060;**
**Before the Honorable Hal R. Ray, Jr., Judge Presiding**

---

### APPELLANTS' BRIEF ON THE MERITS
---

Respectfully submitted,

/s/ Martin J. Cirkiel
Martin J. Cirkiel
Texas Bar No. 00783829
Fed. I.D. No. 21488
marty@cirkielaw.com [Email]
Cirkiel Law Group, P.C.
1005 West 41st Street, Suite 201
Austin, Texas 78756
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
COUNSEL FOR APPELLANTS

## CERTIFICATE OF INTERESTED PERSONS

In compliance with Fed. R. App. P. 28.2.1 and Fifth Circuit Local Rule 28.2.1,

Counsel notes the number and styling of this case, is as follows:

1.   B.P., B/N/F Jessica and James Pruden, Plaintiffs-Appellants v. Burkburnett Independent School District, Defendant-Appellee, No. 25-10962, IN THE UNITED STATES COURT OF APPEALS, FOR THE FIFTH CIRCUIT.

2.   The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

   a.   B.P., a Minor - Plaintiff;

   b.   Jessica and James Pruden - Parents and Next Friends of B.P.;

   c.   Cirkiel Law Group, P.C. - Attorneys for Plaintiffs;

   c.   Burkburnett Independent School District - Defendant;

   d.   Walsh Gallegos Kyle Robinson & Roalson, P.C., - Attorneys for Defendant.

/s/ - Martin J. Cirkiel
MARTIN J. CIRKIEL
Attorney for Plaintiff-Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant by and through her Counsel of Record, requests Oral Argument in this cause and reasonably believes the decisional process would be significantly aided by oral argument, as otherwise contemplated by Fed R. App. P. 34(a)(1) and Fifth Circuit Local Rule 28.2.3.

Respectfully submitted,

/s/ - Martin J. Cirkiel
MARTIN J. CIRKIEL
Attorney for Plaintiff-Appellant

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

I.     STATEMENT OF THE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.    SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.     ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VII.   CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**TABLE OF AUTHORITIES**

Acosta v. Amarillo Indep. School District, 2025 U.S. Dist. LEXIS 80866 (N.D. TX-Amarillo Div., April 29, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Addington v. Farmer's Elevator Mutual Insurance Co., 650 F.2d 663, 666 (5th Cir. 1981), *cert. denied*, 454 U.S. 1098, 102 S. Ct. 672, 70 L. Ed. 2d 640 (1982) . . . . 35

Alvarez- Sanders v. Texas Youth Commission, 2009 U.S. Dist. LEXIS 135912 (W.D., TX- San Antonio Division, April 29, 200) citing Zinkland v. Brown, 478 F3d 634, 637 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 17

Boggs v. Krum Independent School District, 376 F. Supp. 3d 714 (E.D. TX- Sherman Division, March 21, 2019) *citing* Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Brown v. District 299 - Chicago Public Schools et al, No. 1:2009cv04316 - Document 100 (N.D. Ill. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Byrd v. Bates, 220 F.2d 480, 482 (5th Cir. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . 39

Camarillo v. Carrols Corp., 518 F.3d 153, 157 (2d Cir. 2008) . . . . . . . . . . . . . . . 43

Carter v. Orleans Parish Public Schools, 725 F.2d 261, 264 (5th Cir. 1984) . . . . . 25

Cook v. Morgan Stanley Smith Barney, 2014 U.S. Dist. LEXIS 112681 * 21-22 (S.D. TX- Houston Div., August 14, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Conley v. Gibson, 355 U.S. 41, 45 46, (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . 17,39

Delano-Pyle v. Victoria County, 302 F. 3d 567, 574-7 (5th Cir. 2002) *citing* Rizzo v. Children's World Learning Ctrs., Inc., 173 F.3d 254, 261 (5th Cir. 1999)................
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-26,33,44

Doe v. Tex. A&M Univ. at p. 383 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008) . . . . . . . . . . 17

Duffy v. Riveland, 98 F.3d 447, 454-56 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . 44

Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 598 (5th Cir. 1981) . . . . 35

Edionwe v. Bailey, 860 F.3d 287, 291(5th 2017). . . . . . . . . . . . . . . . . . . . . . . . . . 21

Estate of Esquivel v. Brownsville Indep. Sch. District, 2018 U.S. Dist. LEXIS 231738 * 16-17 (S.D. TX.- Brownsville Div., September 11, 2018) . . . . . . . . . . . . . . . . . 31

Estate of Lance v. Lewisville Independent School District, 743 F.3d 982, 992 (5th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 27

Estate of Saylor v. Regal Cinemas, Inc., 54 F. Supp. 3d 409, 424 (D. Md. 2014) ..43

Estate Of Smith v. Forest Manor, Inc., 2017 WL 142830 at * 22 (N.D. Ala., W.D., April 20, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Foman v. Davis, 371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Franklin v. Gwinnett County Pub. Schools, 503 U.S. 60, 75 (1992) . . . . . . . . . . . 19

Furstenfeld v. Rogers, No. 3-02- CV- 0357 L, 2002 U.S. Dist. LEXIS 11823, at *5 (N.D. Tex. Jul. 1, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

General Star Indemnity Company v. Vesta Fire Insurance Corporation, 173 F.3d 946, 950 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

Gentiello v. Rege, 627, F.3d 540, 546 (5th Cir. 2010) . . . . . . . . . . . . . . . . . 21, 36

Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 21

H.P. v. New Caney Indep. School District, H-12-3007 (S.D. Tex, May 23, 2013)  43

Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . 24

Harrison v. Rubin, 174 F3d 249, 253 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . .35

Hitt v. Pasadena, 561 F.2d 606 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . 39

Independent Enterprises v. Pittsburg Water & Sewer Authority, 103 F.3d 1165, 1175 (3rd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 179 (2005) . . . . . . . . . . . 19-20

L&A Contracting v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir. 1994) . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Laber v. Harvey, 438 F3d 404, 426-427 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . 35

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lightbourn v. County of El Paso, Texas, 118 F.3d 421, 428 (5th Cir. 1997) . . . . . 26

Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 82 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lowrey v. Texas A&M University System, 117 F.3d 242, 247 (5th Cir. 1997) . . . 18

Lyn-Lea Travel Corp. v. American Airlines, Inc., 283 F.3d 282, 286 (5th Cir.), cert. denied, 537 U.S. 1044, 123 S. Ct. 659, 154 L. Ed. 2d 516 (2002) [quoting 1, 139 F.3d 494, 499 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Mary's Honor Center v. Hicks, 509 U.S. 502, 524; 125 L. Ed. 2d 407; 113 S. Ct. 2742 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 672 (5th Cir. 2004) . 25-26, 28

Neely v. PSEG Texas, Ltd. Partnership, 735 F3d 242, 247 (5th Cir. 2013) . . . . . . 25

North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 521 (1982); quoting United States v. Price, 383 U.S. 787, 801 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

PGA Tour, Inc. v. Martin, 532 U.S. 661, 688, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 294 (5th Cir. 2005) . . . . . . . . . . . 31

Pickett v. Texas Tech Univ. Health Sciences Ctr., 2022 U.S. App. LEXIS 16564 at *30-31 (5th Cir., June 15, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Peykoff v. Cawley, 2025 WL 1380070, at *8 (5th Cir. May 13, 2025) . . . . . . . . . . 15

Appellants' Brief On The Merits

Randolph v. Rodgers, 170 F.3d 850, 859 (8th Cir.1999) . . . . . . . . . . . . . . . . . . . 44

Rideau v. Keller Independent School District, 978 F. Supp. 2d 678, 681 (N.D.- Fort Worth, Texas, March 5, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Roger Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 14; 120 S. Ct. 2097; 147 L. Ed 2d 105 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Schorr v. Borough of Lemoyne, 243 F. Supp. 2d 232, 235 (M.D. Pa. 2003) . . . . . 43

Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 17

Smith v. Harris Cnty., 956 F.3d 311, 317- 318 (5th Cir. 2020) . . . . . . . . . . . . . . 26

Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana, 252 F.3d 781, 786 (5th Cir.), cert. denied, 534 U.S. 995 (2001) . . . . . . . . . . . . . 18

Thompson v. Goetzmann, 337 F.3d 489, 495 (5th Cir. 2003) . . . . . . . . . . . . . . . . 17

U.S. ex rel. Willard v. Humana Health Plan of Texas Inc., et al., 336 F.3d 375, 386 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

United States v. Emergency Staffing Solutions, Inc., 2023 WL 2754347, at *8 (N.D. Tex. Mar. 31, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**FEDERAL LAW**

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Americans With Disabilities Act, 42 U.S.C. §12131, et seq. ("ADA") . . . . . *passim*

**FEDERAL RULES**

Fed. R. Civ. P. 8(d)(2), (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Fed. R. Civ. P. 15(a) 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATEMENT OF JURISDICTION**

This is an appeal by the Plaintiffs-Appellants in a civil case. The District Court had jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the Constitution and laws of the United States.  More specifically that B.P was a victim of discrimination based upon disability pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504" or "the Rehab Act") and the Americans With Disabilities Act, 42 U.S.C. §12131, et seq. ("ADA").[1]

The Trial Court issues a final order on July 28, 2025 (ROA. 1275).  Appellant filed her *Notice of Appeal*[2] on August 19, 2025 (ROA. 1267) in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure.

This Court of Appeals has jurisdiction to hear this appeal pursuant to 28 U.S.C. §1291 and Federal Rule of Appellate Procedure.

**I. STATEMENT OF THE ISSUES**

1.      Did The District Court Err In Granting The School District's Fed. R. Civ. P. 12(b)(6) *Motion To Dismiss* B.P.'s Discrimination Based upon Disability Claims?

---

[1]. There were other constitutional, federal and state law claims, since abandoned and not part of this appeal.

[2]. Pursuant to Local Rule 28.2.2, the record from the District Court Of The United States has been filed with this Court Of Appeals for the Fifth Circuit and will be cited as (ROA.XXX).

2.      Did The District Court Err In Denying B.P.'s Fed. R. Civ. P. 59(e) *Motion For Reconsideration*?

3.      Did the District Court Err by Not Permitting B.P. to *Amend* her Complaint?

## II. <u>STATEMENT OF THE CASE</u>

A.      Factual Resume[3]

4.      B.P. was born was born on July 05, 2009. She is currently fifteen (15) years old.  B.P. is currently a student within Burkburnett Independent School District and has been for all times relevant to this complaint. She is currently enrolled at Burkburnett Middle School within BISD.  B.P. qualifies for special education services under the eligibility criteria of Autism and Speech/Language Impairment. She receives related services for her Autism, speech impairment, and personal care in the Life Skills program. She receives some of this instruction in a special education setting. (ROA.123)

5.      B.P. had accommodations put in place while at school consistently from February 7, 2021, through February 6, 2024. B.P.'s accommodations provided that she needed support and services to be successful in the educational environment, and for

---

[3]. The following facts are taken from the last live pleading, the *First Amended Complaint*. [DE# 18].

maintaining safety for herself as well as others, including but not limited to: constant supervision throughout the day; monitoring while performing any tasks; prompting, cueing, social skills, redirecting, monitoring, and escort during transitions; a staff-to-student ratio of 1:1; or 1:2; or 3:10; depending on the setting; frequent redirection and assistance; and close supervision and visual supports. (ROA.123).

6.      On or around May 6, 2022, B.P. arrived at school at least by the bell time of 7:45 A.M. (ROA.123). B.P. went to her classroom with her teacher, Mr. Mike Strikland, and her teacher aides, Mrs. Teresa Holden, Mrs. Shanen Jarmakouitz, and Mrs. Sue Rueschenberg. B.P. also had access to a "sensory room." (ROA.124).

7.      Inside the sensory room was a Padded Frog Swing that hung from a pipe mounted through the ceiling tiles. The swing came with specific instructions from the manufacturer that proper installation using safe appropriate and safe components and weekly inspection and maintenance are critical, and that proper supervision and spotting are needed when the swing is used. There was also no padding on the floor of the room. The swing required the use of padded surfaces on the floor for safety of any children who might use the swing. (ROA.124).

8.      On this day, when B.P. entered the sensory room at BISD she got into the swing and began to use it.   However, at this time the swing had been used longer than

it should have been without undergoing inspection. As such, it was in an extremely dangerous state of disrepair. Further, B.P. was not being closely monitored while using the swing, as provided for in her accommodations. While B.P. was swinging in the chair, it broke. B.P. subsequently hit the floor with such force that it caused significant physical injuries. (ROA.124).

9.      Emergency medical services were contacted, and B.P. was brought to the United Regional Hospital on May 6, 2022. The injuries that B.P. suffered as a result of the broken swing were: cranial injury with loss of consciousness of unspecified duration; injury to thorax; injury of abdomen; fracture of vault of skull; fracture of occiput (back portion of the back of the skull); other fracture of unspecified side of occiput; and traumatic subdural hemorrhage with loss of consciousness of unspecified duration. (ROA.124).

10.      After the initial review at United Regional Hospital, B.P. had to be air flighted to Cook Children's Hospital in Fort Worth, Texas. This was over 130 miles from her residence. Due to the severity and nature of the injury B.P. did not return to school during the 2021- 2022 academic year. Following B.P.'s injury, the District failed to offer appropriate supports, related services, or further evaluations. Further, BISD failed to provide procedural safeguards in a timely manner. (ROA.125).

11. B.P. has suffered various psycho-emotional effects as a result of her injury, including but not limited to increased self-harming behaviors, causing further physical pain and suffering; increased physical aggression against other people; increased anxiety while at school; increased agitation; increased manic episodes at school; increased fatigue at school; and refusal of sensory tools including swings. B.P. claims her non-disabled peers were able to benefit from working, safe physical exercise equipment without injury, while she was not. (ROA.125).

B.    Procedural Resume[4]

12. On May 6, 2024, B.P. filed her *Original Complaint* including claims related to the pursuant to the United States Constitution, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") and the Americans With Disabilities Act, 42 U.S.C. §12131, et seq. ("ADA") as well as state law claims pursuant to Section 22.0511 of the Texas Education Code and Chapter 121 of the Texas Human Resources Code. Among other things B.P. noted that "Plaintiff reserves the right to replead if new claims and issues arise upon further development of the

---

[4]. Due to the nature of the proceedings, some facts were developed after the formal date for the ability to amend had passed, but before the discovery cut-off. Accordingly, they are included in this section.

facts, as permitted by law. (ROA. 007).[5]

13.     On July 12, 2024, the School District filed a *Partial Motion To Dismiss*. (ROA.028).   A *Joint Scheduling Conference Court* was filed on August 12, 2024.[6] (ROA. 071). On August 26, 2024, B.P. filed her *Response* to the School District's *Motion To Dismiss*. (ROA. 079). Again, and among many other things B.P. noted that if the Court granted the District's *Motion* in total or in part, she be given to the opportunity to file an amended complaint which should be freely given. , Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002). (ROA. 87).   She reiterated her request in the CONCLUSION AND PRAYER. (ROA.100).

14.     On September 3, 2024, a *Scheduling Order* was filed.  Most importantly, the deadline for leave to file an amended pleading, was November 15, 2024.  The Discovery cut-off was May 23, 2025. (ROA.104).  On September 9, 2024 the School District filed their *Reply*. There is nothing in this writing addressing B.P.'s request to amend. (ROA.111).   On November 4, 2024, Plaintiffs gave notice to the Court of a

---

[5]. Most important to this appeal, B.P. maintained a "failure to provide a free and appropriate public education claim ("FAPE")," a professional bad faith and gross misjudgment claim" and failure to keep safe claim" all under the Rehab Act, and a "failure to accommodate claim under both the Rehab Act and ADA. (ROA. 013, 014).

[6]. During this early period the Honorable Hal Ray, Magistrate Judge was appointed as Trial Judge.

settlement in an underlying administrative proceeding, and in doing so withdrawing her FAPE based claim and a "respondeat superior claim" under Section 1983, further simplifying their complaint and the proceedings. (ROA.116). The Magistrate Judge considered all the pleadings on file, the abandonment and settling of certain claims and on November 4, 2024, ordered B.P. to file an amended complaint within 14 days of the *Order*. The previous motions and responses were was deemed as moot. (ROA.120).

15.   B.P. did so. Her *First Amended Complaint* is now the last live pleading. It included the relevant facts cited above. B.P. alleged the Constitutional Claims pursuant to the 14th Amendment of the Constitution of the United States as contemplated by 42 U.S.C. §1983; discrimination based upon disability claims pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") and the Americans With Disabilities Act, 42 U.S.C. §12131, et seq. ("ADA") were all plausible. She reiterated her right to amend if new facts were developed during the discovery period. (ROA.121).[7]

16.   On November 25, 2024 the Burkburnett ISD filed a (renewed) *Motion*

---

[7]. Again, most important to this appeal, B.P. maintained "a professional bad faith and gross misjudgment claim" and failure to keep safe claim" both all under the Rehab Act, and a "failure to accommodate claim" pursuant to the Rehab Act and ADA. (ROA.126, 127).

*to Dismiss Plaintiffs' First Amended Complaint.* (ROA 135-137) and a *Brief In Support* thereof ( ROA.138-157). Therein the School District argued B.P. failed to state a cognizable constitutional claims under the Due Process (ROA.147) and/or Equal Protection Clause (ROA.148) nor could B.P. establish a municipal liability claim (ROA.149). Further, the "failure to keep safe" claim pursuant to Section 504 of the Rehabilitation Act (ROA.151), the "gross misjudgment claim" also regarded to a FAPE was settled, and the "failure to accommodate" claim under both Section 504 and ADA were without merit. Specifically that the facts developed by B.P. sound in negligence not disability discrimination[8] and cannot show intentional discrimination. and shopuld be considefred as if they were waicvwed.    Now given a fourth opportunity to do so, the District again failed to address B.P.'s request she be permitted to amend her complaint if new facts were developed after the writing of their *Motion.* (ROA.152, 153, 154).

17.    B.P. filed a *Response.* In the *Standard Of Review* section, she not only reiterated her right to amend if new facts were developed but more fully briefed the issue. (ROA.166). As to substance, she argued the Constitutional, disability upon discrimination and state law claims were plausible. (ROA.158-183). Most importantly

---

[8]. Of course the same set of facts, can give rise to various causes of action. Estate of Lance v. Lewisville Independent School District, 743 F.3d 982, 992 (5th Cir. 2014)

Appellants' Brief On The Merits                                                                 8

and related to this appeal, B.P. argued the *Motion to Dismiss* arguments regarding "failure to accommodate" were poorly briefed and should be considered as waived. (ROA.172, 173).[9] Moreover, and in any case Plaintiffs meet the elements. (ROA.173 - 175). In regard to the "failure to keep safe claim" B.P. argued that she had provided sufficient facts support these claims. She abandoned the state law claims. (ROA.176 - 180).

18.   The Defendant filed a *Reply*. Most important to the remaining "failure to accommodate claim" remaining in this appeal, they again write little. They recognize that B.P. had withdrawn her state law claims and the "gross misjudgment claim" under the Rehab Act. Given another opportunity to do so, the District failed to addess B.P.'s *Standard of Review* section in general, and the briefing on her right to amend in particular. (ROA.187).

19.   On January 15, 2025, the parties sought a modification of the *Scheduling Order* so that could conduct further discovery (depositions) and attend mediation. (ROA.189). On the next day the Court issued an *Order* confirming the request. (ROA.193). The parties attended mediation on March 3, 2025, but were unable to resolve their differences. (ROA.195). Pursuant to the *Scheduling Order* B.P filed her

---

[9]. B.P. will more fully annotate to the record and argue this issue in the appropriate section below.

expert reports in a timely fashion. (ROA.198). One was by A.J. Heraghty, BSE, MSE a "Sports & Recreation" Expert. He is a tenured full professor and Chairperson of the Health, Physical Education, and Sport Management Department at Suffolk County Community College, part of the State University of New York (SUNY) System. (ROA.1198). Among other things, the District failed to install what is known as the "Southpaw Frog Swing Set" correctly (ROA.1214) or follow maintenance guidelines. (ROA.1206). Most importantly, that the District failed to establish supervision standards and procedures for the swing's use (ROA.1210). Further, that even though the "Instruction Sheet" given by the manufacture to the School District told them to do so, the District nevertheless failed to assure safety mats were under the swing set to likewise assure the safety of a student if she fell off the swing. The report included pictures of the room confirm these concerns. All these failures and more led to the incident giving rise to B.P.'s complaint and injuries. (ROA.1211, 1212, 1213, 1214, 1215, 1216).

20.    On March, 3, 2025, B.P. conducted depositions of Kendy Johnston, the School District's Corporate Representative and then Special Education Director. (ROA.479). She agreed that following manufacturer's instructions should be followed (ROA.449) and equipment like a sensory swing needed to be installed correctly and

maintained, as falls are common. (ROA.441, 444, 449). Also, Staff needed to be supervised and trained on all these matters. (ROA.448). Further, the sensory room was specifically developed for special needs students like B.P. (ROA.363, 388) and an important accommodation was to keep equipment safe especially for students like B.P. (ROA. 446). Further there was a record of concerns about the safety of the swing, but no documentation anyone followed up on the concern. (ROA.405). B.P. would often swing too high (ROA.390) but mats should be used to mitigate any falls. (ROA.470, 471). She agreed that Staff needed to know how to use equipment safely (ROA.437) but did not know as to whether staff were trained on safety measures regarding the sensory swing and need for mats. (ROA.511, 513, 521, 522).

21.    On April 22, 2025, B.P. deposed Glen Wharf, Facility Director. (ROA.566, 579).[10] The sensory swing was also known as "the handicap swing." (ROA.587). He too agreed that Staff should have been supervised and trained on how to use the sensory swing and mats to better ensure safety. (ROA.623, 625, 719, 726, 734, 735). Importantly mulch was used in outside playgrounds for all the non-disabled students to ensure their safety if they fell. (ROA.734, 735). Just as the School District had a duty to ensure all the football players, for instance, were given the necessary

_____

[10]. As his testimony was essentially in accord with Ms. Johnston's there is no need to repeat it all here.

equipment to stay safe, the same duty was due to B.P. and other children with disabilities regarding the use of the sensory swing. (ROA.788, 789).

22.     On April 23, 2025, B.P. conducted depositions of Michael Strickland, the classroom teacher (ROA.295)[11] and Susan Rueschenberg, B.P.'s Aide. She worked with the District for about 36 years. (ROA.316, 817, 831).  Rueschenberg agreed the sensory room was specifically developed for special needs students like B.P. and they required close supervision. (ROA.847, 849).  She never received any training on its use or need for safety measures, (ROA.872, 873, 906, 907) including the need for mats (ROA.878, 879) or safety measures in general. (ROA.868). The mats were not used for safety but instead to place the students for naps. (ROA.882, 884).  She did not place any mats under the sensory swing and B.P. on the day of the incident. (ROA. 921, 926, 933).  She was admonished to be aware that students like B.P. were being permitted to swing too high when using the sensory swing.  Importantly, that if B.P. had not been swinging so high on the date of incident, her injuries could have been minimized. (ROA.1261). Evidently Rueschenberg was paying attention to B.P. at the time of the incident because she didn't even know if B.P. had bounced into the hallway or if she flew into it. (ROA.934).

---

[11]. For all practical purposes, his  testimony was essentially also in accord with Ms. Strickland's and Ms. Rueschenberg's, and there is no need to repeat it here.

23.    Also on  April 23, and while still within the discovery period, the Court issued a *Memorandum Opinion* and *Order* dismissing all claims. (ROA.217-234).  In regard to the "failure to keep safe claim" the Court recognized that B.P.'s main argument was a lack of supervision and could not otherwise meet the elements of that claim.  (ROA.230).   In regard to B.P.'s "failure to accommodate claim" the Court wrote:

> "... B.P. does not provide facts to show how BISD's policies impacted a disability, or that anyone at BISD intentionally failed to follow that plan. Further, the FAC does not allege facts showing that BISD excluded or discriminated against B.P. because of a disability.
>
> Finally, B.P. does not allege that any BISD employee knew that the Board of Trustee's policies would lead to discrimination against B.P. due to a disability.  Therefore, the *First Amended Complaint* ("FAC") does not plead facts to show that anyone at BISD disregarded an excessive risk to B.P.'s safety. The FAC provides legal conclusions, but none of the allegations satisfy Rule 12(b)(6)'s requirements that B.P. plead facts to state a claim. The facts as presented do not allow the Court to reasonably infer that there was any BISD misconduct or that BISD deprived B.P. of a constitutional or statutory right due to a disability." (ROA. 230, 231)

24.    The Trial Court also issued a *Judgment*. (ROA.235).

25.    B.P. filed a *Rule 59(e) Motion for Reconsideration* arguing among other things that in regard to the "failure to accommodate claim" the Magistrate Judge used

an incorrect standard of review[12] and thereby committed a "clear error of law" (ROA.239).    Additionally that B.P. met the elements of a plausible "failure to accommodate claim" and the Magistrate Judge again used an incorrect standard of review and thus committed a "clear error of law" (ROA.240 - 242).  Based upon the new facts adduced since the District filed their *Motion To Dismiss* and recent deposition testimony, B.P. sought leave to file an *Amended Complaint*.  Once again, most relevant to this *Appeal* are the additional facts, in support of the *Failure To Accommodate Claim* pursuant to Section 504 and the ADA.[13] (ROA.242 - 247; 252-262).

26.    The District filed a *Response*. Importantly, it included substantial deposition testimony and evidence in support of their position.  For instance the classroom teacher testified the sensory was swing was used by non-disabled students, inferring B.P. couldn't maintain a disability discrimination claim if the swing was used by non-disabled students. (ROA.286). Of course, the inclusion of this evidence (as

---

[12]. B.P. will more fully annotate to the record and will also argue this issue in the appropriate section below.

[13]. B.P. also included an Equal Protection Claim pursuant to the 14th Amendment to the United States Constitution, and a Disparate Treatment claim under the Rehab Act in her proposed amended complaint.  For the purposes of this Appeal B.P. believes the same set of facts support her *Failure To Accommodate Claim* under both the ADA and Rehab Act and abandons those claims.

well as others) created a fact issue as to whether or not the swing was only used for student's with disabilities or not. (ROA.285).[14]   The District argued B.P. cannot establish the necessary "good cause" to be able to amend her complaint.[15] Now for the very first time in the litigation after various attempts to do so, the District comments on B.P.'s request to amend, alleging the effort to do so constitutes "bad faith or dilatory motive and is unduly prejudicial to the District" and otherwise would be futile to do so. Further, because B.P. purportedly failed to cure her deficiencies in her earlier amendments, her current request "is the epitome of undue delay." (ROA.273- 332). Overall, they argue that "Burkburnett ISD's alleged negligence in failing to provide that safe school environment does not transform this matter into a disability discrimination claim under Section 504 and the ADA or otherwise give rise to a failure to accommodate claim." (ROA.285).   They provide no caselaw in support of this proposition.

---

[14]. Of course, and regardless whether or not the sensory swing was or wasn't used by non-disabled students, it doesn't negate the District's duty to assure B.P. was supervised correctly, that staff with B.P. were trained on how to use the swing safely, and that a safety mat needed to be used.  None of these specialized services for students with disabilities, i.e., accommodations, re needed for non-disabled students.

[15]. In support they cite United States v. Emergency Staffing Solutions, Inc., 2023 WL 2754347, at *8 (N.D. Tex. Mar. 31, 2023) and Peykoff v. Cawley, 2025 WL 1380070, at *8 (5th Cir. May 13, 2025) ["Though we prefer explicit reasons denying leave to amend, "[t]he absence of any proposed amendments, compounded by the lack of grounds for such an amendment, justifies the district court's implicit denial of" Plaintiffs' request."].

27.    B.P. filed a *Reply*. (ROA.332-358).   She too included citation to deposition testimony and included a videotape of the incident where B.P. was injured. (ROA.359- 1269).

28.    The Judge denied both the *Motion to Reconsider* and the *Motion For Leave To File The Second Amended Complaint*.   Specifically, that "B.P. points to no manifest errors of law or fact, newly discovered evidence, or other reason justifying the Court's reconsideration of its opinion and judgment in this case. B.P.'s Motion rehashes similar arguments that the Court expressly considered and rejected previously.   Moreover, ".... B.P. does not indicate what standard the Court should have used ... " (ROA.1274).   Further, and in regard the *Motion For Leave to Amend*, "B.P. ..... offers no new evidence that was unavailable prior to the Court's entry of judgment" and thus "the Court identifies no such manifest errors of law or fact in need of correction" and in any case would be futile to do so because "B.P. had pleaded her best case." Additionally B.P.'s "one-sentence request is insufficient to give reason for why amendment is appropriate. (ROA.1274, 1275)

29.    B.P. filed a timely *Notice of Appeal*. (ROA.1276-77)

### III. STANDARD OF REVIEW

A.    STANDARD OF REVIEW BY THE APPELLATE COURT

30. The Court of Appeal reviews the grant of a motion to dismiss *de novo*. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). Moreover, any due weight or deference that may otherwise be given to the District Court is not implicated with respect to *issues of law*. Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 82 (2d Cir. 2005).

B. STANDARD OF REVIEW FOR AS 12(b)(6) MOTION TO DISMISS

31. A motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in support of its claims that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45 46, (1957); Thompson v. Goetzmann, 337 F.3d 489, 495 (5th Cir. 2003); Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000). Moreover, the complaint must be liberally construed in favor of the plaintiff and the allegations contained therein must be taken as true. All reasonable inferences must inure to the benefit of Plaintiffs, as well. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).

32. Further, the exacting standards governing Rule 12(b)(6) motions must be considered in light of the liberal pleading requirements of Rule 8(a). Furstenfeld v. Rogers, No. 3-02- CV- 0357 L, 2002 U.S. Dist. LEXIS 11823, at *5 (N.D. Tex. Jul.

1, 2002). Federal Rule of Civil Procedure 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). A complaint will be deemed inadequate under Rule 8(a) only if it fails to: (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist. General Star Indemnity Company v. Vesta Fire Insurance Corporation, 173 F.3d 946, 950 (5th Cir. 1999).

33.   A review of Plaintiffs' Rule 8 pleading requirements evidence B.P.'s pleadings are sufficient to support its claims on the merits is not a question for consideration in connection with the 12(b)(6) motion. General Star Indem. Co. v. Vesta Fire Ins. Corp., 173 F.3d 946, 951 (5th Cir. 1999). Motions to dismiss for failure to state a claim are viewed with disfavor in this circuit and are rarely granted. Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana, 252 F.3d 781, 786 (5th Cir.), cert. denied, 534 U.S. 995 (2001); Lowrey v. Texas A&M University System, 117 F.3d 242, 247 (5th Cir. 1997). It is well-settled that liberal discovery rules and summary judgment motions, not motions to dismiss, should be used to  issues and to dispose of un-meritorious claims. Furstenfeld at *5.

C.    STANDARDS OF REVIEW FOR DISCRIMINATION CASES

34.    In <u>Roger Reeves v. Sanderson Plumbing Products, Inc.</u>, <u>530 U.S. 133, 14</u>; <u>120 S. Ct. 2097</u>; <u>147 L. Ed 2d 105</u> (2000) the Court noted that it is particularly crucial in looking to the facts and the reasonable inferences from those facts in discrimination cases "as the question facing triers of fact in discrimination cases is both sensitive and difficult." Further, lower Courts should not treat discrimination cases with more scrutiny than other cases dealing with questions of fact, citing <u>St. Mary's Honor Center v. Hicks</u>, <u>509 U.S. 502, 524</u>; <u>125 L. Ed. 2d 407</u>; <u>113 S. Ct. 2742</u> (1993). This public policy is an important consideration when dealing with a case where a student has been victimized.

35.    The Supreme Court has noted in a Title IX case (which is equally applicable to related to discrimination based upon disability claims) that, "[t]he statute is broadly worded." <u>Jackson v. Birmingham Bd. of Educ.</u>, <u>544 U.S. 167, 179</u> (2005). Hence, "[t]here is no doubt that 'if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language.'" <u>North Haven Bd. of Educ. v. Bell</u>, <u>456 U.S. 512, 521</u> (1982); quoting <u>United States v. Price</u>, <u>383 U.S. 787, 801</u> (1966). Further, "[d]iscrimination is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." <u>Jackson</u>, <u>544 U.S. at 175</u> (internal quotations omitted.). Further, "Congress

enacted Title IX not only to prevent the use of federal dollars to support discriminatory practices, but also to provide individual citizens effective protection against those practices." Jackson, 544 U.S. at 180. "Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe." Franklin v. Gwinnett County Pub. Schools, 503 U.S. 60, 75 (1992).

Moreover:

"Statutes of rehabilitation should be construed in a liberal and humanitarian mode thus effectuating successfully the legislature's objective intentions. Such construction of rehabilitative statutes promote the public interest, public welfare, public state policy and the police powers. Such salutary constructions properly disregard technical and meaningless distinctions but give the enactment the most comprehensive application of which the enactments are susceptible without violence to the language therein. Deep East Texas Regional Mental Health & Mental Retardation Services v. Kinnear, 550 S.W.2d 550, 563 (Tex. App. – Beaumont, 1994);" *see also* Tchereepnin v. Knight, 389 U.S. 332, 336 (1967) [remedial legislation should be construed broadly to effectuate its purpose].

36.    Plaintiffs clearly and easily meet the standards of Rules 8, and 12(b)(6) as contemplated by Twombly relative to her claims based upon Section 504 of the Rehabilitation Act of 1973 and the Americans With Disabilities Act.  As such, B.P. met her initial pleading burden. The School District's *Motion To Dismiss* should have been denied, in total and in the alternative, in part and the failure to do so was error.

D.    RIGHT TO AMEND

37.    Nevertheless, as B.P. wrote on numerous occasions , that is the Court

believed her complaint failed to state a claim upon which relief could be granted, in total or in part, then before granting the motion, B.P. should have been given the opportunity to replead. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) [the 5th Circuit supports the premise that "granting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim ...] and "when justice so requires." Fed. R. Civ. P. 15(a)(2).

38.    The Appellate Court generally uses an abuse of discretion standard of review in determining whether or not a District Court erred when denying a request to amend a complaint, Gentiello v. Rege, 627, F.3d 540, 546 (5th Cir. 2010) as the District Court did in this case.

E.    STANDARD OF REVIEW REGARDING A RULE 59(e) MOTION

39.    Likewise, a district court's denial of a motion to alter or amend judgment "is reviewed for abuse of discretion and need only be reasonable." Edionwe v. Bailey, 860 F.3d 287, 291(5th 2017).

### IV. SUMMARY OF THE ARGUMENT

40.    The facts before the Magistrate Judge at the time he ruled on the School District's *Motion To Dismiss* supported a plausible *failure to accommodate claim*

pursuant to Section 504 of the Rehabilitation Act of 1973 and the Americans With Disabilities Act.   Specifically, and among other things that the District failed to accommodate B.P.'s disability by assuring staff was trained to use the equipment that was specifically set aside for her use. Additionally, the District failed to accommodate B.P.'s by failing to provide her necessary supervision before the incident where she was injured.  In a related vein, the District failed to accommodate B.P.'s disability as Staff did not assure there was a protective mat in place before using the sensory swing. Importantly, the Magistrate Judge proffered his decision enunciating that the claim failed because "B.P. does not provide any facts to show how BISD's policies impacted a disability ..... or that "any BISD employee knew that the Board of Trustee's policies would lead to discrimination against B.P. due to disability." (ROA.230, 231). The Magistrate Judge used an incorrect standard of review, a *clear error of law*, the first time and erred thereby.

41.    The Magistrate Judge erred a second time when not granting the *Motion For Reconsideration* on B.P.'s claim the School District failed to accommodate her disabilities in a number of manners and particulars.

42.    In addition and in the alternative the *Magistrate Judge* erred for a third and now most important time by not granting the *Motion For Reconsideration* because

to do otherwise; i.e., deny the request to file an amended complaint would be *manifestly unjust*. With all this in mind, Appellant proceeds as follows.

## V. ARGUMENT AND AUTHORITIES

43.     Plaintiffs incorporate by reference, as if fully set forth herein all the above-noted paragraphs. Further, each succeeding paragraph and section incorporates by reference, as if fully set forth herein, the one above it.

A.     ABOUT DISCRIMINATON BASED UPON DISABILITY CLAIMS

1.     The Rehabilitation Act

44.     Section 504 of the Rehabilitation Act of 1973, was enacted "to ensure that handicapped individuals are not denied benefits because of prejudiced attitudes or ignorance of others" in federally funded programs. Brennan v. Stewart, 834 F.2d 1248, 1259 (5th Cir.1988).

2.     The Americans With Disabilities Act

45.     The ADA states in relevant part:

"[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132 (1990); *see also* 28 C.F.R. § 35.130(b)(7) ["A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the

modifications would fundamentally alter the nature of the service, program, or activity."].

The ADA is a federal anti-discrimination statute designed "[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Delano-Pyle v. Victoria County, 302 F. 3d 567, 574-7 (5th Cir. 2002) *citing* Rizzo v. Children's World Learning Ctrs., Inc., 173 F.3d 254, 261 (5th Cir. 1999). As the language in the ADA generally tracks the language set forth in the Rehab Act for this type of a claim, thus the "[j]urisprudence interpreting either section is applicable to both." Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000). A School District can be liable under both for the acts and omissions of staff pursuant to the theory of *Respondeat Superior*. Delano-Pyle v. Victoria County.

### 3. Elements Of A Failure To Accommodate Claim

46. Accordingly, B.P. can meet the elements of a *failure to accommodate claim* (1) if she has a qualifying disability; (2) the disability and limitations were known to the District and (3) the District failed and refused to make reasonable accommodations for such known limitations. "If the plaintiff proves those three elements, 'the defendants are liable for denying the accommodations.'" *See* Pickett v. Texas Tech Univ. Health Sciences Ctr., 2022 U.S. App. LEXIS 16564 at *30-31 (5th Cir., June 15, 2022) [finding failure to accommodate claim where university failed to

provide student lecture and materials and to modify deadlines]; *see also* <u>Neely v. PSEG Texas, Ltd. Partnership</u>, <u>735 F3d 242, 247</u> (5th Cir. 2013).

47.    Moreover, the ADA expressly provides that a disabled person is discriminated against when an entity fails to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." §12182(b)(2)(A)(iii);  <u>Delano-Pyle</u> at 575.

48.    Further, a plaintiff asserting a private cause of action for violations of the ADA may only recover compensatory damages upon a showing of intentional discrimination. <u>Delano-Pyle</u> at 574-75, *citing* <u>Carter v. Orleans Parish Public Schools,</u> <u>725 F.2d 261, 264</u> (5th Cir. 1984). "Discrimination on the basis of disability differs from discrimination in the constitutional sense. To determine whether [the defendant] discriminated against [the plaintiff] on the basis of his disability, [the courts] examine the ADA itself and its own definitions of discrimination." <u>Melton v. Dallas Area Rapid Transit</u>, <u>391 F.3d 669, 672</u> (5th Cir. 2004).

49.    In review- for a student to recover against a school district on a claim related to the ADA the student must (1) have a disability; (2) be excluded from participation in or denied the benefits of services, programs, or activities for which a

public entity is responsible, or was subjected to discrimination by the public entity and (3) such exclusion, denial of benefits, or discrimination was by reason of the student's disability. *See* Melton at 671-72 (5th Cir. 2004) *citing* Lightbourn v. County of El Paso, Texas, 118 F.3d 421, 428 (5th Cir. 1997); Delano-Pyle at 574 (5th Cir. 2002); D.A. v. Houston Indep. Sch. Dist. (D.A. I), 716 F. Supp. 2d 603, 618 (S.D. Tex. 2009).

> 4.   The Failure To Accommodate Claim In B.P.'s First Amended Complaints Was Plausible

50.   B.P. can easily satisfy the elements. It is uncontroverted that the District knew she had a disability.

51.   Further, that B.P.'s disabilities and limitations were open and obvious and well known to the District, Smith v. Harris Cnty., 956 F.3d 311, 317- 318 (5th Cir. 2020). The School District does not contest this element either.

52.   Thus the only element that B.P. needed to meet, was whether or not the District failed and refused to make reasonable accommodations for her disabilities. Again, the District argued the facts provided by B.P. supported a claim of negligence not disability discrimination.[16] B.P. provided the District Court then, and the Panel

---

[16]. The District actually wrote in a footnote that they denied that any of the employees acted negligently in connections with the events of May 6, 2022. (ROA.153).

now, the following in support of her contention, that this claim was plausible at the pleading stage of the litigation.

53.   We start off with the proposition the same set of facts can often give rise to different causes of action, especially when claims of discrimination based upon disability are at bar. *See* Texas Rules of Civil Procedure 47, 48; *see also* Estate of Lance v. Lewisville Independent School District, 743 F. 3d 982, 992 (5th Cir. 2014). There is nothing in state or federal rules or law, that undermines this well-settled proposition. So even if the School District is correct (even in part) that certain acts and especially their gross omissions sound in negligence, that does mean that B.P.'s claims the District excluded her from participation in and denied her the benefits of services, programs, or activities for which a public entity is responsible, does not sound in disability discrimination.  It is not an "either/or" analysis as the School District has argued, and would like the Panel to believe, but rather is an "and/also" analysis, as B.P. posits.  In summary the argument as to whether the facts may also sound in negligence is of no matter. What does matter, is whether or not B.P. provided plausible facts and reasonable inferences related to those facts to support her position.  The answer is an overwhelming "yes."

54.   By way of review her *First Amended Complaint* (ROA.121) simply noted

the claim. In her facts, B.P. alleged she needed accommodations to be safe at school including, close supervision, monitoring, frequent assistance, redirection and visual supports, especially when using the sensory swing. Of special concern, based upon information and belief, was that the swing was not properly maintained. Further, that a safety mat was not installed or set down on the day of the incident. B.P. was not closely supervised and monitored when she used the swing that day. Of course, That was because Staff was not correctly supervised and trained on related matters. (ROA.123, 124, 128).

55.   The District argued that B.P. needed to show (1) she had a disability, (2) they were known to the District and (3) the District failed to make necessary accommodation *citing* Smith v. Harris County, Tex., 956 F.3d 311, 317 (5th Cir. 2020) for this proposition. First, these elements and this case only partially considers the claim. As B.P. noted above, the better analysis is whether or not B.P. was excluded from participation in or denied the benefits of services, programs, or activities for which the School District was is responsible, and subjected to discrimination thereby. *See* Melton at 671-72 (5th Cir. 2004). In any case, they argued that the facts were more akin to negligence and a premises liability claim. (ROA.153, 154) and not a disability discrimination claim. Solely resting on this

argument, the District did not address at all the allegations by B.P. that the District failed to follow B.P.'s Accommodation Plan; first, that Staff failed to correctly supervise the environment and assure the swing was safe to use and second, that Staff failed to assure a safety mat was down. Third, and once B.P. was permitted to use the sensory swing, she was not closely supervised, she was not closely monitored when using the swing, and the Aide failed to assure close visual contact.[17]

56.   As the record reflects, B.P. first argued the Magistrate Judge should deny the 12(b)(6) *Motion to Dismiss* because her claims were plausible. First, the facts. It is uncontroverted that B.P. has significant disabilities requiring close supervision in all her endeavors at school. Importantly, a Sensory Swing was a specific accommodation used to calm her during the day. The next "failure to accommodate claim" centered on the District's failure to supervise staff so that the swing was safe to use in the first instance. The next "failure to accommodate claim" centered on a related supervisory issue- the failure to have a safety mat in place before B.P. used it. The next "failure to accommodate claim" centered on the District's failure B.P. was close supervised by Staff when using the swing. (ROA.167).

---

[17]. At the time Counsel had no information from any School District Staff of the extent of their failures and refusals of the District to keep the swing safe, to supervise staff on maintenance and training.

57.     As noted in the pleadings, the motion should have been denied because reliance on a "negligence" defense conflicts with B.P.'s right to have alternative theories of recovery. *See* Independent Enterprises v. Pittsburg Water & Sewer Authority, 103 F.3d 1165, 1175 (3rd Cir. 1997); [Fed. R. Civ. P. 8(d)(2), (3) and permits alternative and even inconsistent causes of actions and factual allegations and a court may not construe one claim as precluding another]. (ROA.172).

58.     Second, the District failed to address any salient facts nor any caselaw relevant to the factual allegations.  Accordingly, said *Motion* should have been denied for this reason as well.  L&A Contracting v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir. 1994); Boggs v. Krum Independent School District, 376 F. Supp. 3d 714 (E.D. TX- Sherman Division, March 21, 2019) *citing* Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th Cir. 2008) ["A party 'waives an issue if he fails to adequately brief it.'"].  (ROA.172, 1173).

59.     Third and in any case, B.P. met the elements. Again, it is uncontroverted she is a person with a disability, which was well-known to the District Staff.  Further, B.P. had a very specific *Accommodation Plan* that contemplated close supervision for all matters.  Further, not only was the sensory swing required to be safe, but so was the environment, including the need to have a safety mat installed in the room where the

sensory swing was to be used. Another supervisory failure. Last, during the use of the swing B.P. was to be closely supervised and monitored, and she was not. Here the School District does not even address the 'failure to supervise" as a form of disability discrimination. Cook v. Morgan Stanley Smith Barney, 2014 U.S. Dist. LEXIS 112681 * 21-22 (S.D. TX- Houston Div., August 14, 2014). [discussing issues of supervision as a reasonable accommodation concern]. They fail to address their duty to have safe equipment for students with disabilities receiving Special Education Services[18] like B.P. Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 294 (5th Cir. 2005) *citing* 20 U.S.C. 1404 [requiring expenditure of funds for equipment to accommodate student receiving special education services]. The failure to address these very specific issues likewise operates as waiver. (ROA.173, 174).

60.   Here the Estate of Esquivel v. Brownsville Indep. Sch. District, 2018 U.S. Dist. LEXIS 231738 * 16-17 (S.D. TX.- Brownsville Div., September 11, 2018) is instructive. There the Court denied a motion for summary judgment when the plaintiffs in that cause provided sufficient material facts for a reasonable jury to infer that the School District failed to provide 'reasonable accommodations' that were ordered by her physician. Here B.P. alleges the District failed to provide reasonable

---

[18]. Special Education services must be provide by staff who are specifically trained to serve this population. 20 U.S.C. §1401(29).

accommodations to her, despite being ordered by the School District as part of her special education individualized educational and accommodation plan. B.P. argued that accordingly both the ADA and Rehab Act *failure to accommodate* claims were plausible. (ROA.174, 175). As we know the Magistrate Judge disagreed and erred thereby.

### B. THE MAGISTRATE JUDGE FIRST ERRED WHEN FINDING THE FAILURE TO ACCOMMODATE CLAIM WAS NOT PLAUSIBLE

61. The Magistrate Judge correctly cites the elements of a failure to accommodate claim, but then analyzes the claims with an incorrect standard of review. It is worth repeating here:

> "... B.P. does not provide facts to show how BISD's policies impacted a disability, or that anyone at BISD intentionally failed to follow that plan. Further, the FAC does not allege facts showing that BISD excluded or discriminated against B.P. because of a disability.
>
> Finally, B.P. does not allege that any BISD employee knew that the Board of Trustee's policies would lead to discrimination against B.P. due to a disability. Therefore, the *First Amended Complaint* ("FAC") does not plead facts to show that anyone at BISD disregarded an excessive risk to B.P.'s safety. The FAC provides legal conclusions, but none of the allegations satisfy Rule 12(b)(6)'s requirements that B.P. plead facts to state a claim. The facts as presented do not allow the Court to reasonably infer that there was any BISD misconduct or that BISD deprived B.P. of a constitutional or statutory right due to a disability."

(ROA.230, 231)

62. As B.P. later noted in her Rule 59(e) *Motion For Reconsideration* any

discussion by the Magistrate Judge alluding to, considering or relying upon whether or not staff followed School Board Polices & Procedures was misplaced. In fact, in Delano-Pyle v. Victoria County, 302 F.3d 567 (5th Cir. 2002), the 5th Circuit flatly rejected the very theory that the Magistrate Judge relied upon, meaning for ADA and Rehab Act purposes, school board policies & procedures cannot be part of the analysis. Reliance by the Magistrate Judge on this faulty premise, by extension led to a failure to construe the pleading, and the reasonable inferences related thereto, led to the error to even consider B.P.'s specific facts and caselaw in support of her claim. The Magistrate Judge erred by failing to consider that the failure to supervise staff to ensure the sensory swing was safe, and/or the failure to supervise staff to ensure the environment was safe by having a mat on the floor and/or the failure to supervise B.P. during use of the swing, individually and together supported a plausible failure to accommodate claim. (ROA.239, 240).

63. For any and all the reasons noted above, the Magistrate Judge erred when granting the School District's Rule 12(b)(6) *Motion To Dismiss.*

C.     THE MAGISTRATE JUDGE ERRED WHEN NOT GRANTING THE RULE 59(e) MOTION FOR RECONSIDERATION BASED UPON THE ABOVE-NOTED FAILURES; and

THE MAGISTRATE JUDGE ERRED WHEN NOT GRANTING THE RULE 59(e) MOTION FOR RECONSIDERATION WHEN DENYING B.P.'s

REQUEST TO AMEND HER COMPLAINT

64.     As noted just above B.P. filed a Rule 59(e) *Motion For Reconsideration* arguing the Magistrate Judge had erred when granting the School District's *Motion To Dismiss* and even if he did not err, B.P. could proffer an amended complaint that would cure purported deficiencies.  Because these the Rule 59(e) and Rule 15(a) Motion are considered in the same pleading, responded to by the District in one pleading and rules upon by the Magistrate Judge in one pleading, B.P. believes its wise to address them together.

1.     About A Rule 59(e) Motion For Reconsideration

65.     <u>Federal Rules Of Civil Procedure 59(e)</u> permits a party to file a *Motion* to *Alter Or Amend A Judgment* within 28 days after such judgment is entered. The Court may grant a timely motion for reconsideration "for *any reason* (emphasis added) that would justify granting one on a party's motion." Such reasons include "a clear error of law or to prevent manifest." <u>Alvarez- Sanders v. Texas Youth Commission,</u> <u>2009 U.S. Dist. LEXIS 135912</u> (W.D., TX- San Antonio Division, April 29, 200) *citing* <u>Zinkland v. Brown,</u> <u>478 F3d 634, 637</u> (4th Cir. 2007) ["Rule 59(e) in essence, gives the district court a chance to re-examine the evidence and correct any mistakes).

2.     About A Rule 15(a) Motion For Leave Of Court To Amend

66.     It is well-settled that leave to amend should be granted is generally within the sound discretion of the district court. Lyn-Lea Travel Corp. v. American Airlines, Inc., 283 F.3d 282, 286 (5th Cir.), *cert. denied*, 537 U.S. 1044, 123 S. Ct. 659, 154 L. Ed. 2d 516 (2002) [*quoting* 1, 139 F.3d 494, 499 (5th Cir. 1998)]. However, Federal Rule of Civil Procedure 15(a) also make it clear that the trial court is required to grant leave to amend "freely." Id. In fact, the language of R. 15 evidences a bias and predisposition in favor of  granting leave to amend. Courts in this circuit have determined that the purpose of the bias in favor of allowing amendment of the pleadings is to assist the disposition of the case on its merits, and to prevent pleadings from becoming ends in themselves. Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 598 (5th Cir. 1981).

67.     Moreover, while leave to amend should not be granted automatically, the trial court should always err on the side of allowing an amendment. Addington v. Farmer's Elevator Mutual Insurance Co., 650 F.2d 663, 666 (5th Cir. 1981), *cert. denied*, 454 U.S. 1098, 102 S. Ct. 672, 70 L. Ed. 2d 640 (1982); Laber v. Harvey, 438 F3d 404, 426-427 (4th Cir. 2006)[amendment is not prejudicial if it merely adds theory of recovery to facts already pled and offered before discovery has ended]; Harrison v. Rubin, 174 F3d 249, 253 (D.C. Cir. 1999) [permitting amendment that

clarifies legal theories].

68.    Last "[A] motion for leave to amend should not be denied unless there is *quoting* <u>Foman v. Davis</u>, <u>371 U.S. 178</u> (1962)] "undue delay, bad faith or dilatory motive on the part of the Movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of allowance of the amendment." <u>U.S. ex rel. Willard v. Humana Health Plan of Texas Inc., et al.,</u> <u>336 F.3d 375, 386</u> (5th Cir. 2003). Of course, a request to amend can be denied if it would be futile to do so. <u>Gentiello v. Rege</u>, <u>627 F. 3d 540, 546</u> (5th Cir. 2010)[bare bones request to amend is futile if it fails to apprise the facts plaintiff would plead] . B.P. believes its wise to first address the standards for review for the elements.

3.    B.P. Meets The Procedural Elements To Amend

69.    Here B.P. filed her *Original Complaint* on May 6, 2024. (<u>ROA.007</u>). The initial *Scheduling Order* among other things a deadline for leave to file an amended pleading, was November 15, 2024. The Discovery cut-off was May 23, 2025. (<u>ROA.104</u>). After an early dispositive motions with briefing, the parties met in mediation for an underlying special education matter, which settled some items also in the federal case.  Accordingly, the Court mooted the previous dispositive motion and ordered B.P. to file a first amended complaint, which she did in  mid-November

of 2024 as ordered. (ROA.116, 120, 121). The District filed a renewed dispositive motion on November 25, 204 (ROA. 138), B.P. responded (ROA.166) and the District replied (ROA.187). On January 15, 2025, the parties jointly sought modification of the *Scheduling Order* to meet in mediation and if it failed, conduct further discovery through April 23, 2025. (ROA.189). The parties met in mediation in early March but it was unsuccessful. (ROA.195). Due to that failure B.P. took deposition testimony from Kendry Johnson, the Corporate Representative and Special Education Director on March 3.   Counsel for the School District deposed the family on March 20.   The parties agreed to schedule depositions of remaining staff on April 22 and 23, (ROA.295, 817), the last day of the discovery period.   As the record reflects, in the middle of one of the depositions the Magistrate Judge granted the District motion to dismiss. (ROA.217).

70.    In regard to B.P. request to amend the District writes in opposition to B.P.'s effort, but provides little actual argument. Specifically, "...... Over a year after first filing suit—and after the Court dismissed her claims—Plaintiff seeks leave to amend. This is the *epitome* of undue delay following an opportunity to cure deficiencies" ... especially because B.P. did have an expert report on March 3, and the

Court did not rule until April 23. (ROA.283).[19]  They do argue the claim is futile (which B.P. will address below) (ROA.254). Of course, one cannot fault District's Counsel for objecting, that is their job but the facts and procedural resume of the case don't support allegations of  "undue delay, bad faith or dilatory motive on the part of the Movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice."

71.     The record reflects the parties met in mediation the first time that led to a simplification of claims by B.P. and the *First Amended Complaint*.  Over the course of the litigation Counsel for both parties worked well together with no rancor.  No discovery disputes and no objections to either parties need for more time to respond to a motion.  There was one attempt to modify the scheduling order, but that  was unified and intended to extend the discovery period to permit a second mediation and if that failed, permit depositions.  The case was filed on May 6, 2024, and the Court issued its ruling on April 23, 2025, less than a year later, certainly not a very lengthy period of time- nothing dilatory here.   Surely no "bad faith" during the course of the proceedings.

72.     After the Court ruled on the District's *Motion To Dismiss* she sought to

---

[19]. The District also argued that certain claims in the proposed amended complaint constituted bad faith and/or dilatory motive. (ROA.284).  B.P. has dropped those claims.

file what would have been her second amended complaint. One attempt to amend can hardly be considered "a repeated failure." Moreover, merely permitting an amendment, by itself does not cause prejudice.

73. Last, the cases relied upon by the School District and later the Magistrate Judge in denying the request to amend are outliers and not in accord with the overwhelming caselaw in support of B.P.'s position. As eloquently stated in Hitt v. Pasadena, 561 F.2d 606 (5th Cir. 1977):

> "As a general guide to the interpretation of the Federal Rules of Civil Procedure, the Supreme Court has said: "The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957). It is the well-established policy of the federal rules that the plaintiff is to be given every opportunity to state a claim. As this court has often stated, a complaint is not subject to dismissal unless "it appears to be a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations. Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity [for] the plaintiff to state a claim upon which relief [can] be granted." Byrd v. Bates, 220 F.2d 480, 482 (5th Cir. 1955)."

That Panel determined that even if Hitt could have exercised greater diligence plaintiff's loss from a dismissal with prejudice would be very severe as she could have cured certain defects with an appropriate amendment. Without doubt B.P.'s case is even stronger than Hitt's. No futility here.

4.    It Would Not Be Futile To Amend

74.    First B.P. wants to remind the Panel that every step along the way, and in all her pleadings, she gave notice to Counsel for the School District and by extension the Court, that she only seek an amendment if further development of the facts warranted such an effort. To do otherwise would not be ethical and in accord in which the federal rules require. So as a matter of fact, B.P. did not have the facts to warrant the filing of an amended complaint until discovery ended and all the depositions were taken. Save for the Magistrate's Judge's *Order* that intervened, B.P. would surely have filed an amended complaint because at that time she had the evidence to do so. As the following section denotes, the additional information supported B.P.'s "failure to supervise" and "failure to train claims" that together and apart support the failure to accommodate claim.

75.    In B.P.'s proposed *Second Amended Complaint* she noted that the School Board promulgated Policies & Procedures pursuant to federal disability discrimination law, ensuring that B.P be provided services commensurate with her unique and individualized disabilities. Moreover, and in a failure to correctly supervise, the Board failed to develop policies and procedures to ensure that equipment used for children with disabilities was safe. (ROA.252, 253). Further, due to her significant cognitive

impairments and inability to keep herself safe, she needed constant supervision by staff who were well-trained. (ROA.253, 254). Due to her sensory impairments she was provided a specific accommodation, i.e, what is called a "sensory room" with a "sensory swing" to be used for its calming effects upon her. (ROA.254). Nevertheless the School District failed to supervise staff to ensure the swing was safe to use, that a mat was put on the floor to "soften" falls and to ensure B.P. was closely watched and supervised when it was used. Nor was staff correctly trained as to all the above. (ROA.254, 255). Moreover, staff admitted that students who were not disabled benefitted from supervision and maintenance of equipment and environments throughout the various campuses but the sensory room and sensory swing, for students with disabilities like B.P., were not treated equally. (ROA.256, 257).

76.     Importantly, when the District filed their *Response* to B.P.'s motion to reconsider and amend, they attached evidence in support of their position.[20] Here the District "opened the door" and B.P. did the same in her reply. There she included, among other things a rendition of what a video on the incident showed. Without being redundant, it re-emphasizes many other items already addressed in the amended complaint. Importantly, what it shows. among other things, is that the aide was

---

[20]. They included only those parts of deposition testimony that helped their position.

looking at her phone instead of B.P. Further, that B.P.'s head violently bounced off the floor when the swing became dislodged. No mat was observed. Taken together it is clear that B.P. was not being closely monitored at the time she used the sensory swing, an item used specifically to accommodate her cognitive and neurological impairments. The aide admitted as such in her deposition. (ROA.344, 345). The full deposition testimony supported B.P.'s position that the District failed to supervise staff to make sure the sensory room equipment was safe, failed to supervise staff by not providing necessary training on how to use the swing safely and failed to supervise staff on the duty to use the mats for safety. The deposition testimony and video also supported the proposition the aide did not provide B.P. necessary close monitoring and supervision that day. (ROA.344, 345).

> 5. There Is Significant Caselaw In Support Of B.P.'s Failure To Accommodate Claim

77. First and foremost, the failure to have safe equipment for a person with a disability, is a "failure to accommodate claim" under both the Rehab Act and ADA. Gorman v. Easley, 257 F. 3d 738, 741, 749 (8th Cir. 2001)[ police van failed to have wheelchair locks for person in a wheelchair and failed to have a molded cushion, both to keep arrestee safe].

78. In addition, there is no documentation that any specialized supervision,

instructional techniques or training was provided to staff. <u>H.P. v. New Caney Indep. School District</u>, H-12-3007 (S.D. Tex, May 23, 2013). Further, the failure to correctly supervise and train staff is a violation of the Rehabilitation Act (and ADA) when seen in concert with the failure to reasonably accommodate a person's disabilities. <u>Camarillo v. Carrols Corp.</u>, <u>518 F.3d 153, 157</u> (2d Cir. 2008) [holding that under Title III a public accommodations failure to train can constitute a violation of the ADA]; *see* <u>Estate Of Smith v. Forest Manor, Inc.</u>, <u>2017 WL 142830</u> at * 22 (N.D. Ala., W.D., April 20, 2017); *see also* <u>Estate of Saylor v. Regal Cinemas, Inc.</u>, <u>54 F. Supp. 3d 409, 424</u> (D. Md. 2014); <u>Schorr v. Borough of Lemoyne</u>, <u>243 F. Supp. 2d 232, 235</u> (M.D. Pa. 2003). As noted above, the failure by the District to provide B.P. these reasonable accommodations as noted in her accommodation plan at school and ratified by her Admission, Review & Dismissal Committee, commensurate with her own unique and individualized needs, operates as a denial of services and thus a violation of the ADA. <u>Brown v. District 299- Chicago Pub. Sch.</u>.

79.    Here B.P. has provide plausible facts the School District failed to ensure her the equipment she used, specific to her disability was safe. Here B.P. provides plausible facts the School District failed to ensure that staff was supervised and trained sufficiently, specific to the use of the sensory swing. Overall the failure to

accommodate claim is plausible and it would not be futile to permit her to amend and file a second amended complaint. To do otherwise would be manifestly unjust.

6. The Acts And Omissions Were Intentional

80. Further, the various failures of the School District to provide B.P. the reasonable accommodations she required to use the swing safely, i.e, this "denial of benefits," also satisfies the intentional element of an ADA (and Rehab Act) for purposes of damages. Delano-Pyle at 575-576 [finding intentional discrimination where police officer failed to provide an accommodation to obviously deaf person]; Rideau v. Keller Independent School District, 978 F. Supp. 2d 678, 681 (N.D.- Fort Worth, Texas, March 5, 2013) [finding intentional discrimination when student denied benefits, services and activities for which the District was responsible]

81. Moreover and in any case, the assessment of whether a particular accommodation is reasonable or not requires a fact-specific individualized analysis, PGA Tour, Inc. v. Martin, 532 U.S. 661, 688, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001) and is best left to a *motion for summary judgment*. Chisolm v. McManimon, 275 F.3d 315, 327 (3d Cir.2001); Randolph v. Rodgers, 170 F.3d 850, 859 (8th Cir.1999) [finding that whether a sign language interpreter was required under the Rehab Act is a question of fact inappropriate for summary judgment]; Duffy v.

Riveland, 98 F.3d 447, 454-56 (9th Cir.1996)[concluding that whether qualified sign language interpreter was required under the ADA is a question of fact inappropriate for summary judgment].

82.     As such, and taken all the above into consideration both the ADA and Rehab Act *failure to accommodate* claims are plausible at this juncture of the litigation. Doe v. Tex. A&M Univ. at p. 383 [denying motion to dismiss on failure to accommodate claim]; Acosta v. Amarillo Indep. School District, 2025 U.S. Dist. LEXIS 80866 (N.D. TX- Amarillo Div., April 29, 2025) [finding failure to accommodate claim for failing to assure student carried their own epinephrine, did not to train staff for emergency conditions, did not to have trained nurse on campus and refused to administer emergency medications were discriminatory exclusions resulting in the student's death].

83.     B.P. posits the Magistrate Judge committed a clear error of law, the first time, in granting the School District's 12(b)(6) *Motion To Dismiss* when using an incorrect legal analyses more attuned to a constitutional claim than a disability claim. Given the opportunity to correct this error when B.P. filed her Rule 59(e) *Motion For Reconsideration* and a related Rule 15(a) *Motion For Leave To File The Second Amended Complaint*, the Magistrate Judge erred again and again.

## VII. CONCLUSION AND PRAYER

84.    Appellant has provided significant plausible evidence that the District Court erred when granting the School District's *Motion To Dismiss* the first time. Additionally, she has provided plauisble factual support and legal argument that the motion for reconsideration be granted, as well her motion to amend, and that the case be remanded back to the District Court for further proceedings. For the all foregoing reasons the Appellant respectfully requests this Panel reverse the decision of the District Court, remand the case for trial on the merits, and for any and all other relief that may be afforded, whether it be by equity, by law or by both.

Respectfully submitted,

/s/ Martin J. Cirkiel

Martin J. Cirkiel
Texas Bar No. 00783829
Cirkiel Law Group, P.C.
1005 West 41st Street, Suite 201
Austin, Texas 78756
(512) 244-6658 [Telephone]
 (512) 244-6014 [Facsimile]
COUNSEL FOR APPELLANT

46

## VII.  CERTIFICATE OF FILING AND SERVICE

This is to certify that on December 22, 2025 I electronically the foregoing document with the Clerk of the Court using CM/ECF system, which will send electronic notification of such filing to the following:                    filed

Ms. Meredith Walker, Attorney
Texas Bar No. 24056487
mwalker@wabsa.com [Email]
WALSH GALLEGOS KYLE ROBINSON & ROALSON, P.C.
105 Decker Court, Suite 700
Irving, Texas 75062
(214) 574-8800 [Telephone]
(214) 574-8801 [Facsimile]
COUNSEL FOR THE APPELLEE

/s/ Martin J. Cirkiel
Martin J. Cirkiel

47

## VII.  CERTIFICATE OF COMPLIANCE

I further certify that the (1) required privacy redactions (if any) have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1 and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

I further certify that I will mail the correct number of copies of the foregoing document to the Clerk of the Court.

I further certify that two (2) true and correct copies of the foregoing document will be served to all counsel of record, when the 5th Circuit finds the brief "Sufficient", *via* Overnight Mail by Federal Express and addressed to Counsel, and the Clerk of The Court, as noted above.

/s/ Martin J. Cirkiel
Martin J. Cirkiel

48

## CERTIFICATE OF COMPLIANCE

1.      Pursuant to Fed. R. App. P. 32(a)(7)( c) and Local Rule 32.3, the undersigned certifies this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and Local Rule 32.2 because:

      x      this brief contains 10,443 , excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Local Rule 32.2, or

            this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Local Rule 32.2.

2.      Pursuant to Fed. R. App. P. 32(a)(7)(C) and Local Rule 32.3, the undersigned certifies this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) and Local Rule 32.1 because:

      x      this brief has been prepared in a proportionally spaced typeface using Corel Word Perfect in 14 pt. Times New Roman, or

            this brief has been prepared in a monospaced typeface using using Corel Word Perfect in 10½ characters per inch Times New Roman.

3.      THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN FED. R. APP. P. 32(a)(7) AND LOCAL RULE 32.2, MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

                /s/ Martin J. Cirkiel
                Martin J. Cirkiel