**CASE NO. 25-10962**

---

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**B.P., By Next Friends, Jessica and James Pruden,
Plaintiffs - Appellants**

**v.**

**Burkburnett Independent School District,
Defendant - Appellee**

---

**On Appeal from the United States District Court
For The Northern District of Texas,
Wichita Falls Division; Civil Action No. 7:24-cv-00060;
Before the Honorable Hal R. Ray, Jr., Judge Presiding**

---

**APPELLANTS' REPLY BRIEF**

---

**Respectfully submitted,**

**/s/ Martin J. Cirkiel**
**Martin J. Cirkiel**
**Texas Bar No. 00783829**
**Fed. I.D. No. 21488**
**marty@cirkielaw.com [Email]**
**Cirkiel Law Group, P.C.**
**1005 West 41st Street, Suite 201**
**Austin, Texas 78756**
**(512) 244-6658 [Telephone]**
**(512) 244-6014 [Facsimile]**
**COUNSEL FOR APPELLANTS**

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    BRIEF RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    BRIEF FACTUAL RESUME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.    THE FIRST AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . 4

B.    BRIEF PROCEDURAL RESUME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C.    THE PROPOSED SECOND AMENDED COMPLAINT . . . . . . . . . . . . . . 7

III.    BRIEF (RE) STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . 10

IV.    ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A.    THE SCHOOL DISTRICT'S ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . 11

B.    A BRIEF REVIEW OF B.P.'S REPLY . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

D.    ABOUT DISABILITY DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . 15

E.    THE SCHOOL DISTRICT HAS SPECIFIC DUTIES TO CHILDREN
WITH DISABILITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

F.    THE DISTRICT COURT ERRED IN DENYING THE MOTION FOR
RECONSIDERATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

G.    THE DISTRICT COURT ERRED IN DENYING THE MOTION TO
AMEND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# **TABLE OF AUTHORITIES**

## **SUPREME COURT**

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Baker v. Putnal, 75 F.3d 190, 196 (5ᵗʰ Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 17

Davis v. Monroe County Board Of Education. 526 U.S. 629, 651 (1999) . . . . 15, 18

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Perez v. Sturgis Pub. Sch., 598 U.S. 142, 143 S. Ct. 859, 215 L. Ed. 2d 95 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## **COURTS OF APPEAL**

AAA v. AAA Legal Clinic of Jefferson Crooke, P.C. , 930 F.2d 1117, 1120 (5ᵗʰ Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Collins v. Morgan Stanley Dean Whitter, 224 F3d 496, 498-499 (5ᵗʰ Cir. 2000). . 17

Devoss v. Southwest Airlines Co., 903 F.3d 487, 493, fn. #1 (5ᵗʰ Cir. 2018) . . . . 18

Donaldson v. CDB, Inc., 335 F. App'x 494, 503, (5ᵗʰ Cir. 2009) . . . . . . . . . . . . . 27

Frame v. City of Arlington, 657 F.3d 215, 224 (5ᵗʰ Cir. 2011) . . . . . . . . . . . . . . . 20

Gorman v. Bartch, 152 F.3d 907, 911 (8ᵗʰ Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 22

Gorman v. Easley, 257 F.3d 738 (8ᵗʰ Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 15

Heston v. Austin Indep. Sch. Dist., 816 Fed. Appx. 977 (5ᵗʰ Cir. 2020) . . . . . . . . 21

Hicks v. Gates Rubber Company, 833 F. 2d 1406, 1414 (10th Cir. 1987) . . . . . . . 28

Jackson v. Quanex Corp., 191 F.3d 647, 660 (6th Cir. 1999) . . . . . . . . . . . . . . . . 28

L&A Contracting v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

Pace v. Bogalusa City Sch. Bd. , 403 F.3d 272, 291-293 (5ᵗʰ Cir. 2005) . . . . . . . 21

Smith v. Harris County, Tex., 956 F.3d 311, 317 (5th Cir. 2020) . . . . . . . . . . . . . 15

Valdry v. Brennan, 730 Fed. Appx. 207, 210 (5th Cir. 2008) . . . . . . . . . . . . . . . . 28

Wilson v. City of Southlake, 2022 U.S. App. LEXIS 34333 * 13-14(5th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Zinkland v. Brown, 478 F3d 634, 637 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 27

## DISTRICT COURTS

Alvarez-Sanders v. Texas Youth Commission, 2009 U.S. Dist. LEXIS 135912 (W.D., TX- San Antonio Division, April 29, 200) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Boggs v. Krum Independent School District, 376 F. Supp. 3d 714 (E.D. TX- Sherman Division, March 21, 2019) citing Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Cal. Council of the Blind v. County of Alameda, 985 F. Supp. 2d 1229, 1236 (N.D. CAL, October 16, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Estate of Esquivel v. Brownsville Indep. Sch. District, 2018 U.S. Dist. LEXIS 231738 *16-17 (S.D. TX.- Brownsville Div., September 11, 2018) . . . . . . . . . . . . . . . . . 25

Silva v. Farrish, 2025 U.S. Dist. LEXIS 222733 *4 (E.D. NY, November 12, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Worth S. v. Dall. Indep. Sch. Dist. , 2021 U.S. Dist. LEXIS 137999 *22-24 (N.D. TX- Dallas Division, July 23, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Zeno v. Pine Plains Central Sch. District, 2009 U.S. Dist. LEXIS 42848 *; 2009 WL 1403935, at *233 (S.D. NY, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## FEDERAL LAW

Americans With Disabilities Act, 42 U.S.C. §12131, et seq. ("ADA") . . . . . *passim*

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504" or "the Rehab Act") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## FEDERAL RULES

28 C.F.R. § 35.130(b)(1)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 C.F.R. §35.133(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 C.F.R. §41.51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. <u>BRIEF RESPONSE</u>

1.    The School District agrees the incident giving rise to B.P.'s injuries was unfortunate.  They also agree that the same set of facts can lead to different causes of action.  Even so, they ask the Panel to take their *inference* in classifying the incident as a premises liability claim that sounds in negligence.  Accordingly, they reason B.P. does not have a plausible disability discrimination claim, whether it be pursuant to Section 504 of the Rehabilitation Act of 1973, <u>29 U.S.C. §794</u> ("Section 504" or "the Rehab Act") or the Americans With Disabilities Act, <u>42 U.S.C. §12131</u>, et seq. ("ADA") or both.  As the Panel well knows, at this stage of the litigation any reasonable inferences inure to B.P.'s benefit, not the School District. As the District's *Response Brief* is replete with reliance upon this inference, without any caselaw in support of this proposition, B.P.'s claim can be deemed as plausible, and B.P.'s *Appeal* should be granted.  The following arguments further enhance B.P.'s position.

2.    In a related vein, the District argues claims of faulty maintenance are not a disability discrimination matter, because "maintenance and safely applies universally to all students."   If the apparatus in question, the Sensory Swing, was intended to be used for the general student population, then this argument would make some sense, but it is uncontroverted the Sensory Room and Sensory Swing were intended to be used specifically for children with disabilities like B.P.  This  "one size fits all"

Reply Brief                                                                                                    1

argument also fails.

3.      Moreover and even if this argument is valid (and it is not) Disability Discrimination law requires the School District to keep *all* (emphasis added) equipment under the District's control (like the Sensory Swing) safely maintained for students with disabilities.  *See* 28 C.F.R §35.133.  The failure of the District to ensure the swing was safe to use for the class of persons to which B.P. belongs, children with disabilities, likewise supports her "failure to accommodate" and discrimination based upon disability claim.   And even more specifically, the use of the Sensory Room and Swing was part of B.P.'s educational and accommodation plan, as was their duty to supervise her closely, as was duty of her Aide to keep B.P. in her visual line of sight at all times, especially when using the Sensory Swing. The School District fulfilled none of these duties, all reasonable accommodations so that she could use the Swing safely. B.P.'s "failure to accommodate" and disability discrimination claim is plausible based upon this group of failures alone.

4.      Further, the Manufacturer of the Sensory Swing Set required not only timely maintenance of the Swing, but also training of staff in how to use the Swing, and as an additional safety measure, a mat under the swing to limit injuries if and when a child fell off the Swing.  Here again, the School District fulfilled none of these duties either.  Once again, on these matters in particular B.P.'s failure to accommodate

Reply Brief                                                                                                                2

and disability discrimination claim is plausible. But taken together, the litany of failures over the course of a significant period of time, likewise supports B.P.'s proposition the acts and omissions of staff were intentional.

5.    The District Court determined B.P.'s discrimination based upon disability claim was without merit. B.P. filed a Rule 59(e) *Motion For Reconsideration* which was rejected.  In a related vein, even though she thought the then-live pleading had sufficient facts to support a plausible discrimination based upon disability claim, she filed a *Motion For Leave To File A Second Amended Complaint* with facts developed during the discovery process. As we know the District Court rejected this motion as well.  B.P. believes she adequately briefed those matters in her *Brief On The Merits* and as such, relies upon such briefing in this *Reply* except as briefly summarized below.

6.    In summary, the District Court erred in *Granting* the School District's *Rule 12(b)(6) Motion To Dismiss* the first time and erred in denying B.P.'s Rule 59(e) and Rule 15(a) motions.. B.P. asks the Panel to find the District's Court's determination her "Failure To Accommodate" and "Disability Discrimination Claim" was plausible, *Grant* her Appeal and *Remand* the case to the District Court with further orders.

## II.  BRIEF FACTUAL RESUME

A.    THE FIRST AMENDED COMPLAINT

7.    B.P. was born in July of 2009 and is now sixteen (16) years old.  It is uncontroverted she is a person with a disability, having a  diagnosis of Autism[1] and a related Speech/Language Impairment. Importantly, B.P. has a number of deficiencies in her major life activities especially in matters regarding personal care, inability to keep herself safe, and in learning. Accordingly, and at all times relevant to this cause she received instruction and accommodations in a special education setting, pursuant to the *Individuals With Disabilities Education Act* ("IDEA")[2] (ROA.123).  In light of her Autism Diagnosis[3] those *Accommodations* included not only constant close supervision throughout the day but also required visual supports by Staff when performing any task.  She also required a 1:1 staff-to-student ratio in certain settings. In light of B.P.'s related neurological issues her educational and accommodation plan

---

[1]. The IDEA defines *Autism* as "a developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age 3, that adversely affects a child's educational performance."  Other characteristics of Autism include "engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences." 34 C.F.R. §300.8 (c)(1)(I). Autism is classified as a neurodevelopmental disorder.  *See* Diagnostic and Statistical Manual of Mental Disorders (5th ed.). American Psychiatric Association. 2013. p. 31.

[2]. 20 U.S.C. §1401 et seq.

[3]. Autism is classified as a neurodevelopmental disorder.  Diagnostic and Statistical Manual of Mental Disorders (5th ed.). American Psychiatric Association. 2013. p. 31.

permitted her to use what is called a *Sensory Room,* which is a place set aside for students with disabilities, like B.P.  In fact, the room additionally contains what is called a *Sensory Swing[4]* which helps students like B.P. calm themselves during the day.  (ROA.123).

8.     Called the *Padded Frog Swing*, it hung from a pipe mounted through the ceiling tiles.  It came with very specific instructions from the manufacturer which required proper installation and ongoing, even weekly, maintenance being cognizant of the disabling conditions and fragility of the children, like B.P., who used the Swing. Consistent with other safety measures for children with disabilities, like those for a playground, the School District had a duty to ensure padding was placed on the floor under the Swing. Why? For the safety of a student who might use the swing and fall off.  These instructions also noted the obvious, the duty to provide proper supervision and spotting by Staff when the swing is used by a child like B.P.  These safety concerns were well established in the Special Education culture and community.[5]   In

---

[4].  Sensory Swings are simply a great tool for sensory input as well as sensory integration. The predictability of linear swinging can be calming and settling for the children who need that support.  Having the swing perform unpredictable moves such as rocking, spinning, side to side movement, and even start and stop movements while suspended in air, can be very alerting and stimulating for the children who need that support.
https://www.theottoolbox.com/what-you-need-to-know-about-sensory-swings/.

[5].  Known as the *Special Ed Connection* it represents itself as "THE go-to online source for guidance" on all special education challenges for educators and attorneys who practice in this area of the law. It is library akin to Westlaw or LEXIS.  It claims to be "the only source you

fact, they also published material about the Sensory Room in general[6] and also about "Maintenance Tips".[7]  The District acknowledges these duties. (ROA.124).

9.    Notwithstanding these known duties, the record reflects that by May 6, 2022, the Swing had not received timely inspections nor maintenance.  Not surprisingly, it was in an extremely dangerous state of disrepair. B.P. entered the Sensory Room on that day and began to use the Swing. While her Aide was nearby she did not ensure a mat or padding was underneath the swing.  Nor did the Aide provide B.P. constant visual support while using the swing, as provided for in her accommodations.  While B.P. was swinging in the chair it broke.  B.P. fell to the floor with such force that it caused significant physical injuries. (ROA.124)

10.    Emergency medical services were contacted, and B.P. was brought to the United Regional Hospital.  She experienced a fracture of occiput (back portion of the back of the skull), injury to her thorax and abdomen and traumatic subdural hemorrhage with loss of consciousness of unspecified duration. (ROA.124).  Due to the severity and nature of the injury B.P. did not return to school during the 2021-

---

need to keep current on education policy and legal developments. Relied on by more than 2,500 school districts, it's the fastest, easiest, most authoritative way to stay connected to everything happening in special education."

[6]. See Att A, A Closer Look At The Sensory Room.

[7]. See Att. B, Maintenance Tips For Your Sensory Room.  It also includes the duty to train staff about the purpose and not let others turn it into a playground.

Reply Brief                                                                                                                     6

2022 academic year. (ROA.125). She also experienced various psycho-emotional injuries including but not limited to increased self-harming behaviors, increased physical aggression against other people, increased anxiety, agitation and manic episodes at school;. Sadly but not surprisingly, the one thing that can really help her, the *Sensory Swing,* B.P. is too traumatized to use. As the Panel knows, B.P. claims her non-disabled peers were able to benefit from working, safe physical exercise equipment without injury, while she was not. (ROA.125).

B.    BRIEF PROCEDURAL RESUME

11.    As the record reflects the District Court issued its *Memorandum Order* granting the School District's *Motion To Dismiss.* (ROA. 217). B.P. filed a *Motion For Reconsideration* arguing the Court erred in its decision. (ROA. 237). Further B.P. argued she be given the opportunity to amend the purported infirm complaint. (ROA. 242) with an attached proposed *Second Amended Complaint.* (ROA. 250). Both the reconsideration and leave to amend were *Denied.* (ROA. 1270).

C.    THE PROPOSED SECOND AMENDED COMPLAINT

12.    B.P. notes that the following specific facts noted in her proposed amended complaint occurred after discovery was complete and not based "upon reason and belief" as often occurs with an early iteration of a complaint. For instance, the proposed amended complaint noted the Sensory Room required a safety net and not

Reply Brief                                                                                          7

only a mat below the swing.[8]  Further and in regard to allegations of the District's failure to fulfill manufacturers instructions the proposed amended complaint had specific evidence in support of the position there were not any inspections of the swing.  Moreover, while the earlier complaint alleged staff was not trained[9] in use of the swing, discovery confirmed they absolutely were not trained on a number of matters, including how to use the swing safely and ensuring a net or mat was present. Moreover, in discovery we also learned that no fall precautions were put in place. Additionally, B.P. and other students with disabilities who used the swing were at further risk of hitting the walls of the sensory room, if they used the swing too aggressively.  (ROA. 255).  Apparently B.P. was using the swing so aggressively the day of the incident that she literally flew out of the swing and actually landed outside the sensory room.[10]  The previous pleading reflects B.P. hit the unpadded floor with such force she suffered a loss of consciousness, injury to her thorax and abdomen, a fracture of the vault of her skull and occiput (back of the skull), a traumatic subdural

---

[8]. Her live pleading noted the general failure to provide maintenance, noted the need for a mat (nor also a swing), were in addition to her then live pleading. Deposition confirmed what was previously pled, the swing was for students with disabilities. (ROA. 845, 847).

[9]. In her live pleading B.P. claimed her right to Due Process under the 14th Amendment to the United States Constitution was violated by the District because of their failure to train staff. (ROA. 127, 128).

[10]. The Aide was looking at her phone at the time B.P. was in the swing (ROA. 934) not in her visual site as required in her Individualized Educational Plan. (1214, 1216, 1237). .

hemorrhage. B.P. also suffered a Traumatic Brain Injury, (ROA. 256).[11]

13.    In her live pleading B.P. alleged she had an *Equal Protection* claim (ROA. 128) again likely based upon "reason and belief."   Instead, the proposed amended complaint had actual testimony from Kendy Johnston, the Assistant Superintendent of Administrative Services for BISD, who *agreed* (emphasis added) that the School Board had systems in place for maintaining the cafeteria, gym, HVAC & electrical systems for the non-disabled students but no such systems to inspect and maintain the indoor swing for students with disabilities.  She also admitted that the School Board ensured the boys on the School Football Team were sent out with necessary safety equipment like helmets and shoulder pads and that the same safety precautions, like a mat or net, should have been given to B.P.   Further and maybe most importantly, the District had maintained outdoor playgrounds and swing sets without incident.  That was because, and among other things the outdoor swings were put over soft and cushioned surfaces.  Johnson agreed there wouldn't be any reason to treat an indoor swing, for a student with a disability like B.P., differently than

---

[11].  While all agree the Aide was in the room with B.P. at the time of the incident, the Aide was not watching her at all.  In fact only knew of the incident because she heard it.  (ROA. 826).   The inference is clear, not only was the Aide not supervising her, or have a "visual" on B.P., she let her use the swing so "enthusiastically" (ROA. 931) that B.P. flew out of the out of the room,  .

Reply Brief                                                                                                          9

keeping outdoor swings safe.  (ROA. 256, 257).[12]

### III.  (RE) STATEMENT OF THE ISSUES

14.    In light of the above, B.P. believes it wise to even further articulate the issues for review.  To wit; "Did the District Court Err In *Granting* The School District's Fed. R. Civ. P. 12(b)(6) *Motion To Dismiss* B.P.'s Discrimination Based upon Disability Claims?"

15.    Even if *arguendo* the Court did not err in *Granting* the School District's 12(b)(6) Motion, "Did the District Court Err In Denying B.P.'s Fed. R. Civ. P. 59(e) *Motion For Reconsideration* and by extension, the District Court Err by Not Permitting B.P. to *Amend* her Complaint?"

### IV.  ARGUMENT AND AUTHORITIES

16.    B.P. incorporates by reference, as if fully set forth herein all the factual predicate and arguments set forth in her *Brief On The Merits* as well as those addressed in the School District's *Response.*

17.    In addition, B.P. incorporates by reference, as if fully set forth herein all the above-noted paragraphs. Further, each succeeding paragraph and section

---

[12]. In the live pleading B.P. included a *Failure To Train* and *Equal Protection Claim* pursuant to the 14th Amendment to the United States Constitution.   Once again, and for the purposes of this Appeal B.P. believes the same set of facts support her *Failure To Accommodate Claim* under both the ADA and Rehab Act and abandoned those claims in the appeal.

incorporates by reference, as if fully set forth herein, the one above it.

## A.     THE SCHOOL DISTRICT'S ARGUMENTS

18.     Rather than accept responsibility for the injuries B.P. experienced the District argues it was an unfortunate accident and a premises liability claim that sounds in negligence. Accordingly, it does not give rise to claims of disability discrimination, whether it be pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504" or "the Rehab Act") or the Americans With Disabilities Act, 42 U.S.C. §12131, et seq. ("ADA") or both. Alternatively, they argue that claims of faulty maintenance is of no matter, because "maintenance and safely applies universally to all students."[13] Moreover, that the acts and omissions alleged by B.P. do not "allow the Court to reach the conclusion anyone at the School District engaged in intentional discrimination against B.P. because of her disabilities." [Response Brief at p. 15/36 or the "Response"]. Accordingly the Magistrate Judge did not err in granting the motion to dismiss and denying B.P.'s motions to reconsider and amend. [Response  p. 18/36].[14]

---

[13]. Appellants ask the Panel to reject the District's *inference* that Manufacturer's Directives for a Sensory Swing specifically for students with disabilities is somehow transmuted to Directives for the student population at large.   They also argue that use of the sensory room swing was not one of B.P.'s accommodations. (Response at p. 13/30).  That is not correct.

[14]. In footnotes [Response at # 2,3 ] the District posits that B.P.'s discussion on the standards of review are incorrect but as a matter of substance does not argue against them.

19.    In general support of their defense the District argues that "allowing B.P. to proceed on her failure to accommodate claim under the facts contained in the First Amended Complaint would allow students with disabilities to recover for injuries sustained from, in this instance, falling from a swing, while conversely leaving students with no disabilities without a remedy." (Response at p. 12/30).  Two points are relevant here.  First, discrimination based upon disability remedies are applicable to B.P. and whether or not there are remedies applicable to a non-disabled student, is of no important.  If Congress wanted non-disabled students included in such instances they could have done so specifically.  Second and in any case, a non-disabled student could have a remedy under the same or similar circumstances pursuant to a claim based upon violations of the 14th Amendment  to the United States Constitution and 42 U.S.C. Section 1983.

20.    In a similar vein they argue "if a school district failed to change a tire on a school bus and the tire failed causing an accident where students were injured, the fact that some of the students on the school bus have disabilities does not create an additional cause of action for disability discrimination under Section 504 and the ADA."  Of course, that could be true unless it was a specially designed bus for students with disabilities and the District for instance, had failed to ensure the wheelchair lift has been inspected and maintained correctly, and the failure to do so

caused an injury to a student with a disability.

B.    A BRIEF REVIEW OF B.P.'S REPLY

21.    If the apparatus in question, the Sensory Swing, was intended to be used for the general student population, then the District's first argument would make some sense, but it is uncontroverted the Sensory Room and Sensory Swing were intended to be used specifically for children with disabilities like B.P.  Moreover and in any case, even if the District is correct in this first argument (and they are not) Disability Discrimination law requires the School District to keep equipment (like the Sensory Swing) safely maintained for students with disabilities like B.P. *See* 28 C.F.R §35.133. The failure to ensure B.P. could use the swing safely, supports a "failure to accommodate claim" and discrimination based upon disability, as do all the following individually or in concert with each other.

22.    Moreover, and specific to B.P., she had an education and accommodation plan based upon her disabilities, that not only permitted she be able to use a sensory swing, but required it.  The failure to assure B.P. was safe when implementing her educational and accommodation plan, also supports a "failure to accommodate claim" and a plausible discrimination based upon disability claim.

23.    Further and in a related vein, B.P.'s education and accommodation plan also required that she not only be closely supervised by her Special Education Aide but

to be in the Aide's eyesight at all times when using the swing. As we know she was not. The failure of Staff to follow her education and accommodation plan likewise supports a "failure to accommodate claim" and a plausible discrimination based upon disability claim.

24. Additionally, it is uncontroverted that the Manufacturer's Directions required Staff who worked with the Sensory Swing be trained on safety. This included, but was not limited to ensuring there was a mat on the floor before use the swing. Here the facts show that the Aides who were supposed to ensure a mat was under the Swing Set were not trained. The failure of Staff to be trained in such matters likewise supports "failure to accommodate claim" and a plausible discrimination based upon disability claim.

25. Likewise, it is also uncontroverted there was no mat under the swing at the time B.P. used it. The failure of Staff to assure a safety may was in place, likewise supports a "failure to accommodate claim" and a plausible discrimination based upon disability claim.

26. In summary, while each argument above supports a plausible discrimination based upon disability claim, looked at together and in concert with each, not only do they support such a claim, but they also support the contention the District's discriminatory acts and omissions were intentional.

Reply Brief                                                  14

27.    Last, B.P. relies upon *Brief On The Merits* arguing the District Court erred when denying B.P.'s *Motion For Reconsideration* and *Motion To Amend*.

C.    STANDARD OF REVIEW

28.    It is well-settled that B.P.'s complaint must be liberally construed in her favor with the allegations contained therein must be taken as true. More importantly, and as will be noted below, all reasonable inferences must inure to her benefit as well. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).   A close review of the District's rendition of the facts and the inferences that support their position must be rejected.

D.    ABOUT DISABILITY DISCRIMINATION

29.    Its worth repeating that the Court's equate the same liability standards under Section 504 and the ADA for failure to accommodate claims.  Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000).  Further, that for B.P. to prevail on this claim, she plead factual allegations reflecting (1) she was a qualified individual with a disability; (2) her disability and its consequential limitations were known by the School District; and (3) Burkburnett ISD failed to make reasonable accommodations. Smith v. Harris County, Tex., 956 F.3d 311, 317 (5th Cir. 2020). As noted above, the District argues that B.P.'s rendition of the facts don't support her claim.  A review of

the facts noted above, in concert with the law cited below, supports B.P.'s position she

has a plausible discrimination based upon disability claims, and the District Court

erred in determining otherwise, not just one but twice.

E.    THE SCHOOL DISTRICT HAS SPECIFIC DUTIES TO CHILDREN WITH
      DISABILITIES

1.    The Incident Giving Rise To This Cause Does Not Sound In Negligence

30.    The District a makes the rather remarkable argument that because they

have a duty to maintain safety measures for all students, they had no duty to students

with disabilities to keep the sensory swing safe in general and to B.P. in particular.

They provide no actual caselaw in support of this proposition, because they can't-

meaning there is  none.  Here the School District failed to address the merits or

substance of B.P. disability discrimination claim it is thus waived. L&A Contracting

v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir. 1994); Boggs v. Krum

Independent School District, 376 F. Supp. 3d 714 (E.D. TX- Sherman Division,

March 21, 2019) *citing* Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th Cir.

2008).

31.    In addition and in the alternative the District asks the Court to *infer*

(emphasis added) that Manufacturer's Directives for the Safety Swing likewise

supports their above-noted primary argument.  As the Panel well knows at this state

of the pleadings, all the facts as pled by B.P. must be liberally construed in her favor and the allegations contained therein must be taken as true. <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, <u>507 U.S. 163, 164</u> (1993); <u>Baker v. Putnal</u>, <u>75 F.3d 190, 196</u> (5th Cir. 2003).  Further, the Panel must indulge all reasonable inferences in B.P.'s favor and against the School District. <u>Collins v. Morgan Stanley Dean Whitter</u>, <u>224 F3d 496, 498-499</u> (5th Cir. 2000).  In short, this inference by the School District, even if true- and it is not- cannot inure to their benefit at this stage of the pleading. Accordingly, this argument likewise fails.

32.    Akin to the old adage every law student has heard: "If you have the facts on your side, pound the facts; if you have the law on your side, pound the law; if you have neither the facts nor the law, pound the table."  <u>Silva v. Farrish</u>, <u>2025 U.S. Dist. LEXIS 222733 *4</u> (E.D. NY, November 12, 2025).  Here the School District "pounds the table" over and over again throughout their *Response* calling their own failures mere negligence.  Apparently it worked out to their benefit in the lower court, so it is no surprise they try to do so again.  In due respect to the Magistrate Judge the decision was wrong the first time.  The District's reliance upon same is wrong again.  The law unequivocally supports B.P.  The District's argument without legal support fails.

2.    The District's Purchase Of The Sensory Swing Was For Student's With Disabilities

33.     The School District argues throughout its *Response* that the Swing and Manufacturer's Instructions apply to both non-disabled students, and that B.P.'s characterization of the room and more importantly that the swing was tethered to her disability, is incorrect.  This District may believe this to be true, but at this stage of the limitation that *inference* likewise must also rejected, just like the one above.  <u>Collins</u>.

34.     In any case, B.P. starts off with the well-settled doctrine in regard to school-based injuries that we must look to the totality or "constellation of surrounding circumstances" to ascertain liability.  <u>Davis v. Monroe County Board Of Education</u>.  <u>526 U.S. 629, 651</u> (1999).  Here the surrounding circumstances and facts are simple, the School District set aside what is called a *Sensory Room* for students with disabilities having neurological impediments like Autism. It was not intended for use by regular education students.  Moreover, the District specifically purchased the *Sensory Swing* to be used to help children like B.P. who are over-stimulated because of their neurological impairments.  It too was not intended for use by regular education students.  Again and aside from the inferences they ask the Panel to accept as a foundation to their argument, they provide no caselaw in support of this recurring theme.  As a matter of course a poorly brief argument is also considered waived.  <u>Devoss v. Southwest Airlines Co.</u>, <u>903 F.3d 487, 493</u>, fn. #1 (5th Cir. 2018).

35.     As a practical note and as to further B.P.'s argument, wheel-chairs are

used for people who are not able to walk, but occasionally are used at airports by otherwise ambulatory people- typically elderly- who need assistance transversing the airport.  Or also when an otherwise ambulatory person leaves the hospital in a wheel chair after appendicitis surgery, for instance  Neither change the original intent that a wheelchair is for persons who cannot walk or its character, to something that is for everybody- meaning a violation of maintenance or use of a wheel-chair still may be litigated as a disability discrimination claim.

36.     Another similar argument could be made for curb cuts.  It is uncontroverted that the original intent of the curb cuts was for persons in wheelchairs. Now it is the law of the land pursuant to the *Americans With Disabilities Act* for curb cuts to placed throughout all public pathways.  Here too they are used by parents with a baby carriage, or the elderly with a cane or a walker but again, neither change their original intent.  Nor does it change the primary beneficiary of the law, the person with a disability.

37.     The District's argument they had no duty specific to students with disabilities in general and B.P. in particular  can easily be rejected.  To the extent the District Court also relied upon this argument, it too erred.

3.      Even If The Sensory Swing And Manufacturer's Directions Are Not Solely Related To Students With Disabilities The District Still Has A Duty To Make Sure The Sensory Swing was Safe To Use And Did Not

38.    Under the Americans with Disabilities Act governing general prohibitions against discrimination, public entities are prohibited from providing any aid, benefit, or service that affords a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others. 28 C.F.R. § 35.130(b)(1)(ii). That duty is also addressed in 28 C.F.R. §41.51, a Rehabilitation Act regulation. Cal. Council of the Blind v. County of Alameda, 985 F. Supp. 2d 1229, 1236 (N.D. CAL, October 16, 2013).

39.    The ADA"s implementing regulations specifically requires public entities to *maintain* (emphasis added) in operable working condition those features of facilities and *equipment* (emphasis added) that are required to be readily accessible to and usable by persons with disabilities. Id. at 1237 *citing* 28 C.F.R. §35.133(a); *see also* Frame v. City of Arlington, 657 F.3d 215, 224 (5th Cir. 2011)["..... This is because when Congress intends a statute to be enforced through a private right of action, it also "intends the authoritative interpretation of the statute to be so enforced as well."].

40.    Here it is uncontroverted that the Sensory Swing was "required to be readily accessible to and usable by persons with disabilities" like B.P.   The District admits it did not provide necessary maintenance to the sensory swing, and thus violated the implementing regulations and the intent of the ADA thereby. B.P.'s disability discrimination claim for the School District's failure to maintain the safety

of the Sensory Swing is plausible.  *See* Pace v. Bogalusa City Sch. Bd. , 403 F.3d 272, 291-293 (5th Cir. 2005)[noting incorporation of ADA Standards into the *Individuals With Disabilities Education Act*].

4. THE FAILURE TO SUPERVISE B.P. SUPPORTS A FAILURE TO ACCOMMODATE CLAIM

5. THE FAILURE TO TRAIN STAFF SUPPORTS A FAILURE TO ACCOMMODATE CLAIM

41. In Worth S. v. Dall. Indep. Sch. Dist. , 2021 U.S. Dist. LEXIS 137999 *22-24 (N.D. TX- Dallas Division, July 23, 2021) the District determined that the Student could have a plausible discrimination based upon disability "failure to supervise" or "failure to train" claim seeking civil damages but based upon then-existing caselaw, first had go through the IDEA's Administrative Exhaustion process, relying upon  Heston v. Austin Indep. Sch. Dist., 816 Fed. Appx. 977 (5th Cir. 2020) for this proposition.  Later in Perez v. Sturgis Pub. Sch., 598 U.S. 142, 143 S. Ct. 859, 215 L. Ed. 2d 95 (2023) the Supreme Court determined the Student need not go through Administrative Exhaustion in such matters.  Later Heston was overturned at 71 F. 4th 255 (5th Cir. 2023), The important takeaway here is that there exists a plausible discrimination based upon disability claim for the failure to supervise and/or train staff.

42. Here the School District in their *Response* (at pgs. 26-29/39) do not deny

that claims of failure to train and/or supervise are plausible. Instead they attack the caselaw that B.P. cited in support of this position as not applicable.

43.    Rather that deconstruct that argument[15], B.P. responds as follows. First and foremost, and admittedly such a claim is plausible regardless of the exact applicability of each case cited due their admission. AAA v. AAA Legal Clinic of Jefferson Crooke, P.C. , 930 F.2d 1117, 1120 (5th Cir. 1991)["... any matter admitted is "conclusively established" whether it be pursuant to Rule 36 or "an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party." Second, and notwithstanding B.P.'s reliance on caselaw the School District finds faulty, Worth S. v. Dall. Indep. Sch. Dist. controls.

44.    Third and most importantly B.P. argues facts and reasonable inferences noted in her live pleadings supports this failure to train and/or supervise "failure to accommodate claim." Of course, in the amended complaint that relied upon discovery

---

[15]. B.P. does comment on one case in particular, Gorman v. Easley, 257 F.3d 738 (8th Cir. 2001), rev'd on other grounds at 536 U.S. 181 (2002). Jeffrey Gorman is a paraplegic and is confined to a wheelchair, which has a molded cushion.. In May 1992, Gorman was arrested and placed in a police van but it lacked a wheelchair locks which otherwise would have permitted him to be transported in his chair. Instead the Officers' removed Gorman from his chair and placed him in a bench and strapped him in with a belt. The belt broke away and Gorman was injured. Among other things Gorman argued the City discriminated against him under the ADA because it did not provide a *safe* (emphasis added) transportation system. *See* Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir. 1998). That is exactly what B.P. has argued: the School District failed to provide her a safe Sensory Swing.

and was rejected by the District Court, the Staff Person responsible for B.P.'s safety when using the Sensory Frog Swing admitted she was not trained on a number of matters. She also admitted that while in the Sensory Room with B.P. at the time B.P. used the swing, she was looking not at B.P. but at her phone. These claims are plausible.

### 6. THE FAILURE TO HAVE A SAFETY MAT ALSO SUPPORTS A FAILURE TO ACCOMMODATE CLAIM

45. Except for a random mention of a mat once (*Response* at p. 20/30, fn. #11) conspicuous by its absence is the School District arguing *at all* they had no duty to have a mat in the sensory room under the swing, Nor do they argue that the failure to do so is *not* (emphasis added) indicative of a plausible failure to accommodate B.P.'s disability claim. Here the School District once again fails to address the merits or substance of the contention the failure to have a mat in place was a failure to accommodate B.P.'s disability and a plausible discrimination claim; it is thus waived. L&A Contracting v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir. 1994). Importantly and in regard to the "failure to train" claim noted above, Staff admitted she was not trained as to the use and necessity of having a mat in place when the Sensory Swing was used. The District failed to address this specific claim as well.

### 7. THE DISTRICT INTENTIONALLY DISCRIMINATED AGAINST B.P.

46.    The District writes little as to "intentionality.' (Response at p. 116/30. What little is written appears to be conclusory, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and as such the Panel can reject the District's contention B.P.'s claims do not support the "intentionality" requirement. They do cite Wilson v. City of Southlake, 2022 U.S. App. LEXIS 34333 * 13-14(5th Cir. 2022)[16] for the proposition the 5th Circuit has not fully delineated the precise contours for showing intentionality, though it requires more than deliberate indifference and is a high bar.

47.    The Panel did note, without using the term "intentionality" in particular that "these statutes (the Rehab Act and ADA) provide a damages remedy only to protected persons in limited circumstances, that is, when the public agent utilizes such conduct whilst interacting with someone the actor knows to be a qualified person with a disability, and resulting limitations necessitating certain action or inaction are both known and disregarded." In that case, "because the Wilsons have not put forth evidence demonstrating the existence of a genuine dispute regarding these elements, the district court properly dismissed their ADA and Rehabilitation Act intentional discrimination claims. Id. at *26-27;" see also Estate of Esquivel v. Brownsville Indep. Sch. District, 2018 U.S. Dist. LEXIS 231738 *16-17 (S.D. TX.- Brownsville Div.,

---

[16]. This case was adjudicated upon a *Motion For Summary Judgment*, meaning issues of intentionality are best left for a summary proceeding and not a motion to dismiss.

September 11, 2018) [noting "a reasonable jury could infer that [the school district] knew that a disabled individual's constitutional rights were 'substantially likely to be violated' if [it] subsequently *ignored* the implementation of the required accommodations"). That is exactly what happened to B.P.

48.    Here B.P. has put forth a number of facts, related to a number of failure to accommodate matters, that are contested.    In summary the Appeal should be granted and the case remanded back to the District Court for further consideration, including a likely *Motion For Summary Judgment.*

## F.    THE DISTRICT COURT ERRED IN DENYING THE MOTION FOR RECONSIDERATION

49.    B.P. relies upon her *Brief On The Merits* where she fully argued this issue.  She believes there is nothing particularly relevant in the School District's *Response* requiring further comment except to note the following.  Specifically, that even if the District Court did not err on this matter, it did as to B.P.'s request to amend.

## G.    THE DISTRICT COURT ERRED IN DENYING THE MOTION TO AMEND

50.    B.P. relies upon her *Brief On The Merits* where she fully argued this issue.  She believes there is nothing particularly relevant in the School District's

*Response* requiring further comment except to note the following. Again, B.P. believes her last live pleading was sufficient to support her various failure to accommodate claims. But even if was not, the facts she gathered in the discovery stage, otherwise unavailable to her when she amended her complaint at an earlier time in the process, conclusively had a number of admissions by staff.

51.    For instance, the Aide given the duty to supervise B.P. in the Sensory Room when using the sensory swing, admitted she was not provided any supervision or received training on how to safely do so. She also admits she not provided any supervision or received training on ensuring the safety mat was in place. She also admitted in using the term *supervision* specifically as to B.P., she failed to supervise her  closely with continuous visual contact, a specific accommodation under B.P.'s educational plan. In fact, she looking at her phone at the time she should have been looking at B.P. Surely these litany of failures can't be excused.

52.    While used in the context of a Rule 59(e) Motion to same language and public policy argument supports B.P. Specifically, the Panel should address the District Court's "clear error of law" as to do otherwise would permit a manifest injustice." Alvarez-Sanders v. Texas Youth Commission, 2009 U.S. Dist. LEXIS 135912 (W.D., TX- San Antonio Division, April 29, 200) *citing* Zinkland v. Brown, 478 F3d 634, 637 (4th Cir. 2007) ["Rule 59(e) in essence, gives the district court a

Reply Brief                                                                                              26

chance to re-examine the evidence and correct any mistakes].

53.     Would could be more unjust in permitting the District Court's decision to stand, in light of the fact the District failed for years to inspect and maintain the Sensory Swing?

54.     Would could be more unjust in permitting the District Court's decision to stand, in light of the fact the District inspected and maintained equipment through all its campuses but not the Sensory Swing?

55.     What could be more unjust in permitting the District Court's decision to stand in light of the School District and B.P.'s Aide, failing to ensure a safety mat was in place?

56.     What could be more unjust in permitting the District Court's decision to stand in light of B.P.'s 1:1 Aide looking at her phone she was supposed to watching B.P.?

## V.  **CONCLUSION**

57.     Without saying so the School District has done an artful job in disaggregating B.P.'s discrete failure to accommodate the claims.  This attempt must be rejected as it "robs the incidents of their cumulative effect",  Donaldson v. CDB, Inc., 335 F. App'x 494, 503, (5th Cir. 2009) *citing* Jackson v. Quanex Corp., 191 F.3d 647, 660 (6th Cir. 1999); *see also* Andrews v. City of Philadelphia, 895 F.2d 1469,

Reply Brief                                                                                                      27

1484 (3d Cir. 1990)[... just as "'[a] play cannot be understood on the basis of some of its scenes but only on its entire performance, . .. similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario'".].   It has been addressed by this Circuit Court,  Valdry v. Brennan, 730 Fed. Appx. 207, 210 (5th Cir. 2008) and other courts as well.  *See also* Zeno v. Pine Plains Central Sch. District, 2009 U.S. Dist. LEXIS 42848 *; 2009 WL 1403935, at *233 (S.D. NY, 2009)[jury verdict, fee award *affirmed* at 702 F. 3d 655 (2nd Cir. 2012)]. In summary, whatever a School District does in relation to allegations of disability discrimination the Courts consider the environment over all, meaning the reasonableness of a District's response or lack thereof, must be compared to the environment overall, not a particular claim in a complaint. Hicks v. Gates Rubber Company, 833 F. 2d 1406, 1414 (10th Cir. 1987).

58.    In summary B.P.'s failure to accommodate disability discrimination was plausible the first time and the District Court erred in granting the School District's Rule 12(b)(6) Motion.

59.    Even if the District Court did not err at first, it erred when not granting the Rule 59(e) Motion For Reconsideration.

60.    And even if the Court did not err in denying B.P. motion to reconsider, it surely erred in not permitting her to amend her complaint by adding factual support

found in discovery not otherwise available to her in earlier attempt to amend.

## **PRAYER**

Based upon all the above, B.P. argues the District Court erred in all the manners and particulars noted above. For the all foregoing reasons the Appellant respectfully requests this Panel reverse the decision of the District Court, remand the case for trial on the merits, and for any and all other relief that may be afforded, whether it be by equity, or by law or by both.

Respectfully submitted,

/s/ Martin J. Cirkiel
Martin J. Cirkiel
Texas Bar No. 00783829
Cirkiel Law Group, P.C.
1005 West 41st Street, Suite 201
Austin, Texas 78756
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
COUNSEL FOR APPELLANT

## CERTIFICATE OF FILING AND SERVICE

This is to certify that on February 25, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which will send electronic notification of such filing to the following:

Ms. Meredith Walker, Attorney
Texas Bar No. 24056487
mwalker@wabsa.com [Email]
WALSH GALLEGOS KYLE ROBINSON & ROALSON, P.C.
105 Decker Court, Suite 700
Irving, Texas 75062
(214) 574-8800 [Telephone]
(214) 574-8801 [Facsimile]
COUNSEL FOR THE APPELLEE

/s/ Martin J. Cirkiel
Martin J. Cirkiel
Attorney Of Record For
Appellants-Plaintiffs

30

## VII.  CERTIFICATE OF COMPLIANCE

I further certify that the (1) required privacy redactions (if any) have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1 and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

I further certify that I will mail the correct number of copies of the foregoing document to the Clerk of the Court.

I further certify that two (2) true and correct copies of the foregoing document will be served to all counsel of record, when the 5th Circuit finds the brief "Sufficient", *via* Overnight Mail by Federal Express and addressed to Counsel, and the Clerk of The Court, as noted above.

/s/ Martin J. Cirkiel
Martin J. Cirkiel
Attorney Of Record For
Appellants-Plaintiffs

31

# CERTIFICATE OF COMPLIANCE

1.      Pursuant to Fed. R. App. P. 32(a)(7)( c) and Local Rule 32.3, the undersigned certifies this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and Local Rule 32.2 because:

        x      this brief contains 6,147 , excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Local Rule 32.2, or

              this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Local Rule 32.2.

2.      Pursuant to Fed. R. App. P. 32(a)(7)(C) and Local Rule 32.3, the undersigned certifies this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) and Local Rule 32.1 because:

        x      this brief has been prepared in a proportionally spaced typeface using Corel Word Perfect in 14 pt. Times New Roman, or

              this brief has been prepared in a monospaced typeface using using Corel Word Perfect in 10½ characters per inch Times New Roman.

3.      THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN FED. R. APP. P. 32(a)(7) AND LOCAL RULE 32.2, MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

                         /s/ Martin J. Cirkiel
                         Martin J. Cirkiel, Esq.

32